CASE 48.—ACTION BY JUSTUS CRUTCHER AGAINST THE
     LOUISVILLE & NASHVILLE RAILROAD FOR PER-
     SONAL INJURIES.—November 10, 1909.

## Louisville & Nashville R. R. Co. v. Crutcher

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

1.   Master  and  Servant—Injuries—Action—Jury  Questions—
     Gross Negligence.—In a switchman's action for injuries caus-
     ed by being thrown from a switch engine cab, whether plain-
     tiff was thrown from the engine by the gross negligence or
     the engineer in running at a dangerous rate of speed held
     for the jury.
2.   Release—Validity—Mistake.—If an injured servant signed a
     release of a claim for injuries believing it to be a receipt
     for wages due him, and the question of a settlement was not
     mentioned at the time, the release was invalid as being
     obtained by fraud or mistake.

3. Release—Jury Question—Conflicting Evidence.—Where the testimony was conflicting as to whether a release was signed under the belief that it was a receipt for wages, as claimed by one party thereto, the question was for the jury.

4. Release—Actions—Burden of Proof.—A written release of all claims for injuries, signed by plaintiff, made out a prima facie defense when introduced in a personal injury action, and the burden was on plaintiff to avoid the release by showing its invalidity.

5. Master and Servant—Instructions—Concrete Instructions— Sufficiency.—In a switchman's action for injuries by being thrown from a switch engine cab, where plaintiff claimed that the engine swayed violently when running at a high speed, and was being so run when he was thrown out, an instruction that if plaintiff was injured by gross negligence of defendant's engineer in operating a certain engine in its yards, by which negligence plaintiff was thrown from the engine and injured, the jury should find for him in such sum as would compensate him for pain and mental anguish suffered, if any, and which it is reasonably certain that he will suffer hereafter, and for impairment of his earning power, if any, was not sufficiently concrete as to plaintiff's contention, and the court should have instructed that, if the jury believed that by the engineer's gross negligence in operating the engine at a high and dangerous rate of speed plaintiff was thrown from the engine and injured, they should allow him such sum as would compensate him for pain of body and mind suffered, if any, or which he is reasonably certain to suffer hereafter, and for impairment of earning power, if any, resulting directly and proximately from the injury, not exceeding the amount demanded.

6. Release—Instructions—Sufficiency—Concrete Instructions.— In a switchman's action for injuries by being thrown from a switch engine cab, in which defendant offered a release, which plaintiff claimed was signed by him under the belief that it was a receipt for wages, an instruction that if the jury believed the paper relied on by defendant as a release was executed by the parties, each understanding that it was a release of all of plaintiff's claims against defendant on account of the injury, they should find for defendant, but, if they believed that it was executed by the parties under a mutual understanding that it was for the time lost by plaintiff for 12 days on account of his injuries, the jury should regard the paper as a release, was not sufficiently concrete, and the court should have instructed, in connection with an instruction authorizing a recovery if plaintiff was thrown

from the engine by the gross negligence of defendant's engineer, that plaintiff could recover if the jury believed that the paper read in evidence as the release was executed upon the mutual understanding of both plaintiff and defendant that it was for time lost by the plaintiff for 12 days on account of his having been injured, and that plaintiff executed the release by mistake, or fraud of defendant.

7. Master and Servant—Injuries—Assumption of Risk—Concrete Instructions.—In a switchman's action for injuries by being thrown from a switch engine cab, where plaintiff claimed that the accident was caused by the swaying of the engine while it was running at a dangerous speed, an instruction that when plaintiff entered defendant's service he assumed all the risks ordinarily incident to his employment, and, if the injury received by him was in his ordinary employment and in the ordinary operation of the engine he was on, the jury should find for defendant, was not sufficiently concrete, and the court should have instructed that when plaintiff entered defendant's service he assumed all risks ordinarily incident to the business conducted with ordinary care, including the danger from operating the engine on which plaintiff was injured, unless the engineer was guilty of gross negligence in running it at a dangerous rate of speed.

8. Master and Servant—Injuries—Instructions—Contributory Negligence—Concrete Instructions.—In a switchman's action for injuries by being thrown from an engine cab, where defendant claimed that the engine was running at an ordinary rate of speed, and plaintiff was starting to get off when he fell and his foot turned on a lump of coal, but plaintiff claimed that he was thrown out by the swaying motion of the engine, which was running at a high speed, an instruction that, though defendant's agents were negligent, yet, if plaintiff was himself negligent, and such negligence, if any, contributed to the injury, which would not have occurred without it, the jury should find for defendant, was not sufficiently concrete upon the issues, and the court should have instructed that if plaintiff's fall was caused by his negligently undertaking to step from the engine when it was running at a dangerous speed, or by stepping upon a lump of coal and losing his balance, and not by the speed of the engine, or if he failed to exercise such care for his own safety as a person of ordinary prudence similarly situated would usually exercise, and but for which omission he would not have been injured, the jury should find for defendant.

McQUOWN & BECKHAM, CHARLES H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED.

The judgment appealed from must be reversed for any one of the following reasons:

1. If defendant was ever liable to plaintiff on account of the accident sued for, plaintiff made a free, voluntary and complete settlement of his claim therefor with defendant long before this suit was brought he has shown no sufficient reason for the disaffirmance of that settlement; he has never tendered or offered to defendant the amount it paid him in settlement; and he has not shown that defendant practiced any fraud upon him in making the settlement. Wells v. Royer Wheel Co., 114 S. W., 737, and cases there cited; The Addiston Pipe & Steele Co. v. Coppple, 94 Ky., 292; I. C. R. Co. v. Vaughn, 33 R., 906; Same v. Edmunds, 33 R. 933, distinguished.

2. The amount paid plaintiff in settlement of his claim was for such sum as shows conclusively that it could not have been for wages—for time lost while he was off-duty on account of the accident.

3. Plaintiff's sole excuse for executing the release, which is made part of the pleadings and the evidence and which is quoted in the brief, without reading it (if he did not read it) or having it read to him before he signed it is that he believed it was for wages. It was plaintiff's legal duty to know the contents of the paper before he executed it, and the law will not permit him to say that he did not do so. Hazard v. Griswold, 21 Fed. 178, 180; Standard Mfg. Co. v. Slot, 98 N. W., 923; Bonnot Co. v. Newman, 78 N. W., 817; Bannister v. McIntire, 84 N. W., 707; Dellinger v. Gillespie, 24 S. E., 538; Gulliher v. C. R. I. & P. R. Co., 13 N. W., 429; Wallace v. C. St. P. M. & O. R. Co., 25 N. W., 772; Dunham Lumber Co. v. Holt, et al., 26 Sou., 663; Georgia Home Ins. Co. v. Warten, 22 Sou., 288; Lanham v. L. & N. R. Co., 27 R., 773, 120 K., 351; Taylor v. Fleckinstein, 30 Fed., 99; Gibson v. Brown, 24 S. W., 574; Reid, Murdock & Co. v. Bradley, et al., 74 N. W., 896.

4. In three written papers signed by him after the accident, and before the suit was brought, and in statements other persons heard plaintiff make, he stated that the accident happened for a cause for which defendant would not be liable. The judgment in his favor cannot be supported upon his testimony on the witness stand that it happened from a cause different from that by which he had previously repeatedly stated, both in writing and orally, it happened.

5. Under the well settled principle of the law that a written contract is not to be varied from or contradicted by cotemporaneous parol testimony ; it was improper to permit plaintiff to testify to an alleged conversation between him and

Yard-master Wilder in connection with the settlement vouch-
er that Wilder furnished plaintiff.   Lanham v. L. & N. R. Co., 120
Ky. on p. 356;  C. N. O. & T. P. R. Co. v. Zachary's Adm'r, 32 R.
on p. 680.

6.   Plaintiff claimed that the engine was dangerous by reason
of certain characteristics described by him.   He admitted that
he knew all about this condition for a long time before the acci-
dent happened.   There is no pretense that he made any objection
to working with the engine; asked to have it repaired, or that
another engine be substituted or that he had ever had any prom-
ise to repair it or be furnished with a better engine.   Under these
circumstances plaintiff took the risk, if any there was, of injury
while working with that engine.   L. & N. R. Co. v. Stanfill, 32
R. on p. 1044, and cases there cited; Reiser v. Southern Planing
Mill & Lumber Co., 114 Ky., 1; Kirby v. Hillside Coal Co., etc.,
32 R., 519; Avery & Sons v. Lung, Id. 702.

7.   Even if the engine was running faster than the defendant's
rule permitted, the rule was not made for plaintiff's benefit, and
the violation of the rule, if it was violated, was not negligence as
to him and had no connection with his injury.   Hummer's Extrx.
v. L. & N. R. Co., 32 R., p. 1318; Thompson's Commentaries on the
Law of Negligence, p. 5.

8.   The court should have peremptorily instructed the jury to
find for defendant, both on the ground that the plaintiff assumed
the risk of whatever injury he received, and on the ground that
defendant's liability, if any, to him was fairly, fully and freely
compromised between plaintiff and defendant before this suit was
brought and plaintiff never disaffirmed that settlement, or took
any steps toward doing so.

9.   The instructions which the court on its own motion gave to
the jury were prejudicial to the defendant in numerous particu-
lars, L. & N. R. Co. v. Veach's Adm'r, 112 S. W., 869, 872; L. &
N. R. Co. v. King's Adm'r, 115 S. W., 196.

10.   The court erred in refusing to instruct the jury as request-
ed by defendant.

LINDSAY & EDELEN for appellee.

No point is made that the verdict was excessive, or that there
was not very substantial testimony that plaintiff has acquired tu-
berculosis as the direct result of the injury.   Aside from the
testimony of Drs. Roemele and Kenney, two very high class phy-
sicians, that the plaintiff's condition was the direct result of the
accident, we have the latest word of science in dealing with path-
ological conditions in confirmation.   The accepted germ theory

of disease is that the development of any zymotic disease is due to the concurrence of a germ and a favorable enviroment for its development. Any number of tubercular germs might be present upon a perfectly healthful, normal tissue and the disease would not manifest itself. Conversely the tissue favorable for the development of such a disease might be in a weakened condition and favorable to the development of the germ, but in the absence of the germ, of course no disease results. Let the tissue, however, be weakened or enfeebled by a blow or other external cause, and the presence of the germ inevitably produces the disease.

We most respectfully submit to Your Honors that this is the latest word of science upon the subject and so the parable of the seed, some of which fell upon stony ground, others upon thorny ground and still others upon suitably prepared soil, finds its confirmation in the modern theory of the development of zymotic diseases. The testimony of these eminent physicians abundantly demonstrated this as the result of modern science. The jury believed their testimony and the verdict was rendered in mercy rather than in strict justice.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Justus Crutcher was a switchman in the service of the Louisville & Nashville Railroad Company in its yard at Paris, Ky. The crew to which he belonged used an engine known as "No. 603." It was a road engine and had been converted into what is known as a "yard engine." When used as a road engine it had three driving wheels on each side, and a truck composed of four small wheels supporting the front of the engine. To change it from a road engine to a yard engine, the pilot was taken off, a step being put in its place, and the truck of four small wheels was removed. These small wheels served to steady the engine when running, and, to compensate for taking them out, the position of the boiler was changed to balance the machinery upon the three pairs of driving wheels so as to steady it for use in the yards.

In January, 1908, the crew were going with the engine up in the yard to move a car, Crutcher being in the cab of the engine. As to what happened the proof is conflicting. The proof for him is to the effect: That the attempt to steady the engine had been unsuccessful. That it rocked as it went to such an extent that it had acquired the name "Ocean Wave," and this was known to all of them. That the engineer, as they were going up after this car, being in a hurry to get out of the way of a train that was about due, was running about 15 or 20 miles an hour. This caused the engine to oscillate violently, and by reason of this oscillation Crutcher was thrown from the cab. He caught the handhold as he was thrown out, which caused him to swing around with great violence against the step, which struck him in the side, causing violent hemorrhages from the lungs, and by reason of his injuries his capacity to earn money was practically destroyed. The proof for the defendant is to the effect that the engine was running only at its ordinary rate of speed at 4 or 5 miles an hour, that Crutcher started to get down off the engine for the purpose of throwing the switch while the engine was in motion and, that as he stepped his foot turned on a lump of coal, and he lost his balance and fell for this reason.

After he had been laid up for 12 days with his injuries, and when they were not regarded as serious, as they afterwards appeared, the defendant paid him $28.80 and he executed to it a release of all claims on account of his injuries. Afterwards he brought this suit to recover damages, and the defendant pleaded the written release in bar of a recovery. It also traversed the allegations of the petition and pleaded contributory negligence. A reply was filed

by him, and the issue was made up. The case was submitted to a' jury, who found a verdict for him in the sum of $6,000, and the defendant appeals.

The court did not err in refusing to instruct the jury peremptorily to find for the defendant. If this engine wobbled as much as the proof for the plaintiff tends to show when run over six miles an hour, there was evidence of gross negligence on the part of the engineer in running it 15 or 20 miles an hour; and, if by reason of this dangerous speed Crutcher was thrown from the engine, the question of gross negligence should be submitted to the jury.

Crutcher was making $2.40 a day. He had been unable to work for twelve days, and he was paid $28.80. This he testified was paid him for his lost time, and that the question of a settlement for his injuries was not mentioned. He signed the paper in ignorance of its being a release, and believing it to be simply a receipt for his wages. If his evidence was true, the settlement was obtained by fraud or mistake, and this question was for the jury.

The court, at the conclusion of all the evidence, gave the jury these instructions:

"Instruction No. 1. The court instructs the jury that if they believe from the evidence that the plaintiff was injured on January 11, 1908, by the gross negligence of the defendant's engineer in the operation of engine No. 603, in the yards at Paris, by which negligence, he, the plaintiff, was thrown from the said engine, injuring him, then they will find for the plaintiff such sum as will compensate him for his pain and mental anguish, if any, which he has heretofore suffered, and which from the evidence it is reasonably certain that he will hereafter suffer,

if any, for the impairment of his power to earn
money, if any, not exceeding in all $10,000, and,
unless they so believe, they will find for the defend-
ant.

"Instruction No. 2.   The court instructs the jury
that if they believe from the evidence that the pa-
per relied on by the defendant as a release was ex-
ecuted both by the plaintiff and the defendant, each
understanding and agreeing that the said paper was
a release for all claims which the plaintiff had or
might have against the defendant on account of the
injury received by the plaintiff, then the jury are
instructed to find for the defendant; but, if they be-
lieve that the paper produced in evidence was sign-
ed and executed both by plaintiff and defendant with
the mutual understanding that it was for the time
lost by plaintiff for 12 days on account of his hav-
ing received the injury complained of, then the jury
shall not regard the paper as a release of all
claims by the plaintiff against the defendant, but it
shall be wholly disregarded by them.

"Instruction No. 3.   The court instructs the jury
that, when the plaintiff entered the services of the
defendant, he assumed all the risks which are ordi-
narily incident to his employment, and if the jury
believe that the injury received by the plaintiff was
received in the ordinary employment of the plaintiff
by the defendant, and in the ordinary operation of
engine No. 603, then they ought to find for the de-
fendant.

"Instruction No. 4.   Even though the jury may be-
lieve that the defendant, by its agents and servants
then in charge of the engine mentioned herein, was

careless and negligent, yet, if they further believe that the plaintiff himself was careless and negligent, and that such carelessness and negligence on his part, if any, contributed to the injury received by him, but for which contributory negligence on his part, if there was any, the injury would not have been received, then the jury ought to find for the defendant.''

The defendant, among others, asked this instruction: ''The court instructs the jury that if they shall believe from the evidence that the plaintiff, Crutcher, while riding on defendant's engine leaped or stepped from said engine while it was in motion, and thereby received the injury complained of, the jury should find for the defendant.''

The written release barred the plaintiff's action unless the evidence offered by the plaintiff was sufficient to relieve him from it. It made out prima facie a defense for the defendant. The instructions do not so present the matter. The defendant was not required to offer any evidence except the writing to make out its defense. The burden was on the plaintiff to avoid the writing, and the instructions of the court should be so framed as to show this. Another objection to the instructions is that they do not present to the jury in a sufficiently concrete form the plaintiff's case or the defendant's defense. L. & N. R. R. Co. v. King (Ky.), 115 S. W. 196.

In lieu of instructions No. 1 and No. 2, the court should have told the jury that if they believed from the evidence that, by the gross negligence of the engineer in the operation of the engine at a high and dangerous rate of speed, the plaintiff was thrown from the engine and injured, and if they further be-

lieve from the evidence that the paper read in evidence  as a release was executed upon the mutual understanding of both the plaintiff and the defendant that it was for the time lost by the plaintiff for 12 days on account of his having been injured, and that the plaintiff executed the release by mistake, or by fraud of the defendant, then they should find for the plaintiff such sum as would compensate him for the pain of body and mind, if any, which he has heretofore suffered, or which it is reasonably certain he will thereafter suffer, if any, and of the impairment of his power to earn money, if any, resulting directly and proximately from his said injury, not exceeding in all $10,000, and unless they so believe they will find for the defendant.

In lieu of instruction No. 3, the court should have told the jury that when the plaintiff entered the service of the defendant he assumed all the risks which were ordinarily incident to the business conducted with ordinary care, including the danger from the operation of engine No. 603, unless the engineer was guilty of gross negligence in running at a high and dangerous rate of speed as set out in No. 1.

In lieu of instruction No. 4, the court should have told the jury that if they believe from the evidence that the plaintiff, Crutcher, while riding on the engine, negligently undertook to leap or step from it when it was running at a rapid and dangerous rate of speed, or if he stepped upon a lump of coal, and his foot slipped, and he thus lost his balance, and this, and not the speed of the engine, was the proximate cause of his fall, or if while riding on the engine he failed to exercise such care for his own safety as a person of ordinary prudence, situated as he

was would usually exercise, and but for this would not have been injured, then, in any of these events, they should find for the defendant.

We see no other error in the record.

Judgment reversed, and cause remanded for a new trial.