CASE 54.—ACTION BY H. D. HUTCHCRAFT AGAINST THE
LOUISVILLE RAILWAY CO. FOR DAMAGES FOR
PERSONAL INJURIES.—December 13.

# Louisville Ry. Co. v. Hutchcraft

127.   531
130   443

Appeal from Jefferson Circuit Court; Common
Pleas Branch; First Division.

EMMET FIELD, Judge.

Judgment for plaintiff, defendant appeals—
Affirmed.

1. Street Railroads—Injuries to Travelers—Collision with Ve-
hicle—Evidence—Verdict.—In an action for injuries to plain-
tiff in a collision between a vehicle in which he was riding
and defendant's street car, evidence held to sustain a verdict
for plaintiff.

2. Same—Duty of Railway Company.—Where a street car ap-
proached a vehicle on the track it was the motorman's duty
to have the car under reasonable control, to keep a lookout
ahead to avoid a collision, to give notice of the presence of
the car by the ordinary signals, and to exercise ordinary
care to avoid a collision and consequent injury to persons or
vehicles.

3. Same — Contributory Negligence. — Where plaintiff, while
driving a buggy, was injured in a collision with a street car
through the negligence of the motorman, plaintiff was entitled
to recover, unless his own negligence contributed to the
injury and the motorman by the exercise of ordinary care
could not have prevented the injury, notwithstanding plain-
tiff's negligence.

FAIRLEIGH, STRAUS & FAIRLEIGH and GREENE & VAN-
WINKLE for appellant.

Louisville Ry. Co. v. Hutchcraft.

POINTS AND AUTHORITIES.

1. The verdict and judgment are not sustained by sufficient evidence. (L. & N. R. R. Co. v. Price's Admr., 25 Ky. Law Rep., 1033, 76 N. W. 836; South Covington St. Ry. Co. v. Cleveland, 100 S. W., 283; Lexington Ry. Co. v. Fain, 80 S. W., 463.)

2. Appellant was guilty of no negligence, in that its servant exercised all the care that was necessary under the circumstances.

‑‑3. Appellee was guilty of such contributory negligence as should bar a recovery on his part. (South Covington & Cin. Ry. Co. v. Enslen, 38 S. W. 850.)

CHAS. H. SHIELD, GEO. CARY TABB and RAY MANN for appellee.

POINTS AND AUTHORITIES.

The verdict and judgment are sustained by sufficient evidence. (So. Cov. & C. St. Ry. Co. v. McHugh, 25 Ky. Law Rep. 1112, 77 S. W. 202; Flynn v. Lou. Ry. Co., 23 Ky. Law Rep. 57, 62 S. W. 490; Lou. Ry. Co. v. Worley, 31 Ky. Law Rep. 96, 101 S. W. 926.)

OPINION OF THE COURT BY JUDGE HOBSON— Affirming.

Fourth street, in Louisville, runs north and south. Broadway runs east and west, crossing Fourth street at right angles. A double line of street car tracks are on Fourth street; the cars going south running on the west track, and those going north on the east track. On April 22, 1905, H. D. Hutchcraft was driving along Fourth street on the west side to take a young lady to the station on Broadway. He desired to turn around before the young lady got in; so, after reaching the house, he proceeded to turn around. In turning the buggy, he had to drive across the street car tracks. When he turned he saw a street car approaching him from the north and about 100 yards distant. When his horse reached the west track in

making the turn, it became unruly. The motorman commenced ringing his bell, and this made the horse more unruly. The car was not checked in time, and ran into the buggy, turning it over, and throwing Hutchcraft out upon the pavement on his head, from which he sustained serious injuries. He sued the railway company to recover damages. The jury found for him, fixing the damages at $1,000. The court entered judgment upon the verdict, and the railway company appeals.

The chief complaint on the appeal is that the evidence does not warrant a recovery. G. R. Klein thus states the occurrence: "I was on the rear platform with the conductor, and when I saw the horse and vehicle it was on the track approaching. The vehicle was approaching the car, and the horse was cutting across the track, and the car was going at a good speed. I first saw the horse at a distance of 150 feet from the car, and the motorman rang his bell as the car approached on the horse. The ringing of the bell frightened the horse, and the horse commenced cutting up and was unmanageable. Mr. Hutchcraft turned off of the track and was cutting across the track at the time. He kept on in that direction, and he was standing up in his buggy, as you might say, seesawing the horse's mouth trying to stop him; but the horse was so unmanageable that he could not control him. The motorman kept on ringing his bell and did not try to put on his brakes until it was too late. He was within a few feet of the buggy when he first applied his brakes, and he did not make a full application of the brakes until they had struck the buggy and had passed the buggy. The car went 30 feet beyond the striking point of the buggy." John Gates, who was riding a bicycle on

the street at the time and was near by, thus states: "I was going north on Fourth street, on the right-hand side of the street. There was a rig came up behind me and turned to the left, crossing the street. The horse started to cut up, and my attention was attracted to that, and I watched him. It seemed that the horse would not turn out of the track. It appeared that he wanted to go on the right-hand side of the street going north. The horse cutting up attracted my attention. I saw the horse and the rig and the street car collide. It lifted the buggy I should say 6 feet in the air and turned it upside down. Of course, by that time the street car had gone between me and Mr. Hutchcraft and the buggy where they collided, and I didn't see any more. By the time that I got there he was lying there, and people were assisting him. That is about all that I saw. Q. How far did this horse and buggy progress on the tracks before that collision occurred—how many feet? A. About 40 feet, I should say. Q. The buggy was going north? A. The buggy was going north. Q. And the car going south? A. The car going south." There are several other witnesses who more or less substantiate the testimony of Klein and Gates. On the other hand, the motorman and one or two other witnesses for the defendant testify in substance that the horse was unruly, and, after getting out of the way of the car, pulled the buggy back toward the track just before the car reached it, and that the collision would have occurred if the car had been standing still. It is the peculiar province of a jury to weigh conflicting testimony. They not only hear the witnesses, but they see them. The judgment of 12 men accustomed to practical affairs ought rarely to be disturbed on a question like this. From all the evi-

dence and the circumstances, the verdict of the jury seems fairly warranted.

The court gave the jury the following instructions: "It is the duty of the defendant's agents, in charge of the car as it went south on Fourth street at the time mentioned in the petition to have the car under reasonable control, to keep a lookout ahead to avoid injury to people or collision with vehicles that were upon the street, to give notice of the presence of the car by the ordinary signals, and to exercise ordinary care to prevent injury to people or vehicles who were on the street; and if you shall believe from the evidence that the motorman in charge of the car failed to exercise any one of these duties, and that by reason of that failure the plaintiff sustained the injuries of which he complains, then the law is for the plaintiff and you should so find, unless you shall believe from the evidence that the plaintiff was negligent, and that by reason of his negligence he helped to cause or bring about the injury of which he complains. and when, but for which negligence upon his part, if any there was, he would not have been injured. (2) But, if you shall believe from the evidence that the agent of the defendant in charge of its car exercised the duties that I have spoken to you of as being incumbent upon the agents in charge of the car, then the law is for the defendant, notwithstanding the fact that the plaintiff may have received the injuries of which he complains. (3) It was the duty of the plaintiff, as he came north upon the occasion mentioned in the petition toward the street car with which the collision was had, to exercise ordinary care for himself, and to exercise ordinary care in the control of the horse that he was driving; and if you shall believe from the evidence that he failed

to exercise that degree of care, either for his own safety or in the management of the horse that he was driving, and that by reason of that fact he helped to cause or bring about the injury of which he complains, and that he would not have been injured but for such failure upon his part, or that contributory negligence upon his part, if such there was, then the law is for the defendant, unless you shall further believe from the evidence that the defendant's agents in charge of the car—the motorman—could by the exercise of ordinary care have seen the plaintiff's peril in time to have avoided or prevented the injury by the use of ordinary care to that end. If such is the fact, the law is for the plaintiff.''

These instructions admirably stated the law of the case to the jury. The trouble occurred in the daytime. Passengers on the car saw the horse cutting up on the track 100 or 150 feet from the car. The car could have been then stopped long before it reached the buggy; but its speed evidently was not much checked, for it knocked the buggy up 6 feet in the air and ran 30 feet after colliding with it. In South Covington, etc., R. R. Co. v. Cleveland, 100 S. W. 283, 30 Ky. Law Rep. 1072, we sustained a recovery on facts not so strong as those in this case.

Judgment affirmed.