CASE 57.—ACTION BY FRANK BYERS' ADMINISTRATRIX AGAINST THE LOUISVILLE RAILWAY COMPANY FOR CAUSING THE DEATH OF HER INTESTATE.— Nov. 18.

# Louisville Ry. Co. v. Byers

Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Street Railroads—Pedestrian Killed—Speed of Car—Evidence —Weight.—Weight of the evidence in an action for death of a pedestrian struck by a street car held to show that the car was moving at an unusual and dangerous speed.
2. Street Railroads — Collision — Pedestrian—Lookout by Motorman—Evidence—Sufficiency.—Evidence held to tend to show that a motorman did not maintain a lookout before his car struck a pedestrian.
3. Street Railroads — Collision with Pedestrian — Instructions— Motorman's Duty.—In an action for death of a pedestrian struck by a street car, it is proper to instruct that the motorman was bound to maintain a lookout in approaching the crossing, whether there was evidence of his failure to keep a lookout or not, since it is necessary to define the several legal duties of the motorman.

4. Street Railroads—Collision—Pedestrian Killed—Instructions.—
Having refused to instruct that, if after plaintiff's intestate
saw the street car which killed him approaching, he under-
took to cross the track so close to the car that the motorman
in using ordinary care and the means at command could not
avoid the accident, plaintiff could not recover, it was prejudi-
cial error to fail to instruct that under those circumstances
plaintiff could not recover, unless any liability to stop the car
was due to any unusual or dangerous speed.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE
for appellant.

Although appellant in the lower court relied upon a number of
grounds upon which it should have been granted a new trial, upon
this appeal it will confine itself to but two grounds on which it
relies and will expect that the judgment be reversed. These
grounds are as follows:

1. That the court erred in instruction No. 1 given by it to the
jury, telling the jury that it was the duty of appellant's motorman
in charge of the car in question to keep a lookout and that if
he failed in this regard the law was for the defendant, as there
was no proof in the testimony or nothing which tended or con-
duced to prove that there had been any failure upon the part of
the motorman to keep a lookout.

2. That the court erred in refusing to give instruction A offered
by appellant, which instruction, as we believe, concretely stated
appellant's defense and its theory of how the accident occurred,
and was fully justified by the evidence.

### AUTHORITIES CITED.

L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep., 1238 Breed-
ing's Heirs v. T •or's Heirs, 13 B. Mon., 487; McClain v. Esham,
17 B. Mon., 156; Mayes v. Farish, 11 B. Mon., 41; Lexington Ry.
Co. v. VanLaden's Admr., vol. 32, 9 Ky. Law Rep., 1047; Louis-
ville Ry. Co. v. Meglemry, 25 Ky. Law Rep., Part II, 1589;
Hummer's Exor. v. L. & N. R. R. Co., vol. 32 Ky. Law Rep.,
1317.

R. C. and J. J. DAVIS for appellee.

### POINTS AND AUTHORITIES.

1. In case of collision with traveller at crossing of a street car

at intersection of populous streets in city, instruct on requiring motorman to be keeping a lookout is proper. (Louisville Railway Co. v. French, 24 Ky. Law Rep., 1279, Part 2; Owensboro City Railway Co. v. Hill, 21 Ky. Law Rep., 1638; Louisville Railway Co. v. Bossmeyer, 31 Ky. Law Rep., 998; South Covington & Cincinnati St. Ry. v. Eichler, 32 Ky. Law Rep., 1309; Louisville Ry. Co. v. Hutchcraft, 32 Ky. Law Rep., 429; Louisville Ry. Co. v. Boutellier, 33 Ky. Law Rep., 484.)

2. Second and third instructions given by the trial court are proper. (Louisville Ry. Co. v. Poe, 24 Ky. Law Rep., 1700, Part 2; Flynn v. Louisville Ry. Co., 23 Ky Law Rep., 57; Louisville Ry. Co. v. Hoskins, 28 Ky. Law Rep., 124; Owensboro City Ry. Co. v. Hill, 21 Ky. Law Rep., 1638; Central Passenger Ry. Co. v. Chatterson, 17 Ky. Law Rep., 5; Illinois Central Railroad Co. v. Proctor, 28 Ky. Law Rep., 602.)

3. Instruction tendered by appellant was improper. (Louisville Ry. Co. v. Hartman's Admx., 26 Ky. Law Rep., 1174; Louisville Ry. Co. v. Bossmeyer, 31 Ky. Law Rep., 998; Louisville Ry. Co. v. Boutellier, 33 Ky. Law Rep., 484, No. 4; Louisville Ry. Co. v. Phillips, 22 Ky. Law Rep., 842.)

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee recovered of appellant in the court below a verdict and judgment of $3,500 by way of damages for the death of her intestate Frank Byers, alleged to have been caused by the negligence of appellant's servants in operating one of its electric street cars at an unusual and dangerous rate of speed upon and over one of the principal streets of the city of Louisville. The appellant was refused a new trial, and has appealed.

The answer of appellant contained a traverse and plea of contributory negligence. The material facts were that the intestate on Sunday, March 31, 1907, about 1 o'clock p. m., was struck by a passing car of the appellant at the intersection of Shelby and St. Catherine streets as he attempted to cross the street and railway track in front of it. According to the

testimony of a nephew of the intestate, he and his
uncle had gone from the home of the latter to the
corner of Shelby and St. Catherine streets, intending
to take a car and ride out to Cave Hill cemetery.
Upon reaching the place for taking the car, the intes-
tate complained of being cold, and proposed to his
nephew that they forego the trip to the cemetery and
return home, to which the latter consented. They then
started home, attempting to diagonally cross the rail-
way track on Shelby street in front of the car, and
walk westwardly out St. Catherine street. As they
stepped upon the street from the curbing, the car was
apparently half a block away, and approaching rap-
idly. As they got near the track, the intestate and his
nephew walked rapidly or ran to get across it ahead
of the car. This the nephew, being in the lead, suc-
ceeded in doing, but the intestate was less fortunate,
and, though nearly across the track, was struck by the
west front corner of the car, hurled to the ground, and
killed. At the time of the accident there were two
policemen and two ladies awaiting the coming of a
car, and standing near the corner of Shelby and St.
Catherine streets where the cars usually stopped for
passengers. As the car by which the intestate was
killed approached them, one of the ladies signaled to
it with her hand to stop, but it did not do so, or even
lessen its speed, but passed on, going a distance of 30
or 40 feet when it struck the intestate. It was explained
by appellant's servants on the trial that the car was
what is known as an "extra," which was being rushed
to one of its crowded lines, and for this reason it
made no stops on Shelby street the day of the accident.
The four persons referred to for whom the car would
not stop testified on the trial that the car was about 30
feet from the place of the accident when the intestate

stepped upon the track in front of it. They all agreed, as did the nephew of the intestate, that the car in approaching the place of the accident was running at a speed of 20 or 25 miles an hour, and that it did not slacken its speed before striking the intestate. The nephew, two policemen, and one of the ladies testified that they heard no signal from the gong of the car as it approached the crossing or before the collision with the intestate. The other lady stated positively that no signals were given. On the other hand, the conductor and motorman testified, in substance, that the car was running at a rate of speed not exceeding five or six miles an hour, which was the customary and a reasonable rate of speed for the car to travel; that in approaching the crossing at or near which the collision with the intestate occurred, the motorman kept a constant lookout ahead, and gave repeated and the usual signals with the gong; and that the intestate suddenly, and unexpectedly to the motorman, ran on the track just ahead and within a few feet of the car, whereupon the latter rapidly sounded the gong, immediately applied the brakes, and did everything in his power to stop the car before it struck the intestate, but found it impossible to do so. It is patent from the evidence that the view of the motorman ahead of the car and in the direction of the place of the accident was unobstructed the length of a block or square, and that the decedent could have seen the car the same distance.

It will be observed that the evidence, especially as to the speed of the car, was very conflicting, but the manifest weight of it was to the effect that the car was moved at an unusual and dangerous rate of speed. Moreover, the testimony of appellee's witnesses as to its speed was supported by these significant facts,

viz.: That the decedent, who was a large man of 220 pounds weight, was knocked a distance of 25 or 30 feet by the collision, and the car ran 75 feet after the collision before it was stopped. The most reasonable way of accounting for the decedent's going upon the track in front of the car is that he did so supposing the car would stop on the opposite corner to take on the four persons waiting there to enter it, which stop, if made, would have permitted him to cross the track in safety.

It is not contended by appellant that the evidence was not sufficient to take the case to the jury, but insisted that the trial court erred in giving instruction 1, and in refusing to give instructionA, which was asked by it. Instruction 1 is predicated upon the facts alleged in the petition as constituting appellee's cause of action, and, in addition, advised the jury of the duties to be observed by the motorman in order to avoid injury to persons upon or crosisng the street car tract. It is only that part of the instruction which told the jury it was the duty of appellant's motorman to keep a lookout ahead of the car in approaching the crossing and place of accident at the intersection of Shelby and St. Catherine streets to which appellant objects. This objection is based upon the assumption that there was no testimony introduced that tended to prove that the motorman did not maintain such a lookout at the time of the accident. It is true the motorman claimed to have kept a lookout and that no witness in terms contradicted him on that point, but there were nevertheless certain circumstances established by the evidence from which the jury might have inferred that a proper lookout was not maintained. One of these was that if the car was going only five or six miles an hour as shown by the appellant's testi-

mony, and could, as it further conduced to prove, have been stopped within a distance of 50 feet, and the decedent, as shown by appellee's testimony, was 75 feet from the car after he stepped on the street from the pavement and started to cross the track, and there was nothing to prevent the motorman from seeing him and that his purpose was to cross the track ahead of the car, the failure of the motorman to slacken the speed of the car in approaching him, if it could not be stopped altogether to prevent striking him, affords some basis for the inference that he was not keeping a proper lookout. But, whether there was any evidence of a failure of the motorman to keep a lookout or not, that part of the instruction objected to was nevertheless proper, and it has been repeatedly approved by this court in cases similar to this. Louisville Railway Co. v. French, 71 S. W. 486, 24 Ky. Law Rep. 1279; Owensboro City R. R. Co. v. Hill, 56 S. W. 21, 21 Ky. Law Rep. 1638; Louisville Railway Co. v. Bossmeyer, 104 S. W. 337, 31 Ky. Law Rep. 998; South Covington & Cincinnati St. Ry. Co. v. Eichler, 108 S. W. 329, 32 Ky. Law Rep. 1309; Louisville Railway Co. v. Hutchcraft, 127 Ky. 531, 105 S. W. 983, 32 Ky. Law Rep. 429; Louisville Ry. Co. v. Boutellier, 110 S. W. 357, 33 Ky. Law Rep. 484. It is necessary in such cases to define, in instructing the jury, the several duties imposed by law upon a motorman in operating an electric car, and none of these is more important than that of maintaining a proper lookout.

Appellant's second complaint presents a more serious question. Refused instruction A reads as follows: "The court instructs the jury if they believe from the evidence that plaintiff's intestate saw the car with which he collided approaching, and, after seeing the car, undertook to cross the track in front of it, so close

to the front end of said aproaching car that the motor-
man in charge of said car could not by the exercise of
ordinary care and the means at his command stop said
car or check the speed of same in time to avoid collid-
ing with plaintiff's intestate, then the law is for the
defendant, and the jury should so find." The court
gave the usual instructions applicable to a case such
as this, including one as to contributory negligence,
but the latter was so modified by another instruction
as to make it necessary to give one presenting to the
jury the question of whether or not the collision of the
car with the intestate was accidental and his death an
unavoidable casualty; and this aspect of the case in-
struction A was intended to cover. The trial court
properly refused it in the form offered, but it should
have instructed the jury upon that feature of the case
as follows: "The court instructs the jury that if they
believe from the evidence plaintiff's intestate, when
the car with which he collided was approaching, saw
it and undertook to cross the track in front of it so
close to the front end of such approaching car that the
motorman in charge of same could not, after discover-
ing his peril, by the exercise of ordinary care and the
means at his command stop said car or check the speed
of same in time to avoid colliding with plaintiff's in-
testate, then the law is for the defendant and the jury
should so find, unless they further believe from the
evidence that the inability, if any, of the motorman
to stop the car, was due to the unusual or dangerous
speed at which he was running it, if he was so run-
ning it." The failure of the lower court, after reject-
ing instruction A offered by appellant, to give one
expressed as above, was prejudicial error, and for that
reason appellant should have been granted a new trial.

Wherefore the judgment is reversed, with directions for a new trial consistent with this opinion.