## Louisville & Nashville Railroad Company v. Shoemake's Administrator.

(Decided December 18, 1914.)

### Appeal from Henry Circuit Court.

1. Railroads—Action for Damages for Death—Signals—Negligence—Question for Jury.—Where, in a suit to recover damages from a

railroad company for negligently killing a person walking upon its tracks, there was evidence that the train was running at an unreasonable speed, upon a dark, drizzly night, over a public street that was constantly used by pedestrians, and that the engineer failed to sound his whistle after he had discovered the presence of the deceased upon the track, the determination of the question of the company's negligence, and of the decedent's contributory negligence, was for the jury; and the defendant's motion for a peremptory instruction was properly overruled.

2. Instructions—Submission of Question to Jury by.—It is a well-settled rule that both the plaintiff and the defendant have the right to have their respective theories of the case properly presented to the jury; and where a party offers an instruction which is not technically correct, it is the duty of the court to prepare and give a proper instruction on that point.

3. Instructions—Measure of Damages.—A clause in an instruction giving the measure of damages for the negligent killing of the plaintiff, which authorized the jury to take into consideration his age and the probable duration of his life, was erroneous, because it specifically called the jury's attention to certain facts; it was not sufficiently prejudicial of itself, however, to justify a reversal.

4. Streets—Dedication.—The dedication of a public street cannot be shown by the opinion of an individual that the citizens of the town had a right to use the street.

MOODY & BARBOUR and BENJAMIN D. WARFIELD for appellant.

H. K. BOURNE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Allie Shoemake was struck and killed by appellant's train, on Knapp street, in Louisville, Ky., on January 13, 1913; and his administrator having recovered a verdict and judgment for $4,000.00, the company appeals.

Shoemake worked in appellant's shops in South Louisville, and lived on Chester Avenue, between Oak and Burnett streets, in Louisville. At the end of his day's work on January 13th, Shoemake, with his companions Tingle and Capito, started home from the shops. The night was dark, and a drizzling rain was falling. They walked together until they reached the point where Preston street crosses appellant's railroad track at Knapp street. Knapp street extends eastwardly in a straight line from Preston street to Shelby street, a distance of four blocks. It is occupied entirely by the double track of appellant, known in the record as the north track and the south track, respectively.

When Shoemake and his companions reached the crossing at Preston street, Tingle and Capito separated from Shoemake, going in Preston street toward their homes, while Shoemake started home alone, walking eastwardly up Knapp street and upon the north track. Kusee, a stranger to Shoemake, was walking behind him; and, after they had gone about 200 feet east of Preston street, Kusee saw appellant's westbound passenger train at Shelby street, coming towards them, and directly in front of them.

Kusee testified as follows:

"Now, Mr. Kusee, while you were walking along there please state to the jury whether or not, you saw a passenger train coming? A. Yes, sir, I saw a passenger train up there near Shelby street and it was ringing the bell and blowing the whistle, at the same time when they seen the young man what I was in behind of; and I said 'look out there pard, there comes the six o'clock passenger train.' Q. What did you do? A. I got off of the track with him. Q. Now when you got off of the track did he get off of the track? A. Yes sir. Q. Did you get off of the track next to the freight train? A. In between the two tracks. I hollored at this young man; I said 'Look out there pard, here comes the six o'clock passenger train.' Q. Then you got in between the two tracks? A. Yes sir. Q. Did you or not walk some distance between the two tracks? A. Yes. sir. Q. State to the jury whether or not at about that time there was any signal given by that passenger train? A. Yes sir, the bell was ringing and the whistle was blowing at the same time as I was holloring at this here young man, at same time I hollored he was struck by the passenger train and then it knocked me down by it. Q. The engine struck him? A. Yes sir. Q. And knocked him down? A. Yes sir. Q. And threw the body back against you? A. Yes sir. Q. Both fell between the tracks? A. Yes sir. Q. Where did the engine strike him, if you know? A. On the left side of the temple."

At the time Shoemake was struck by the west bound passenger train, a freight train was passing the same point, going eastwardly upon the south track.

The distance between the inside rails of the north and south tracks was eight feet eight inches, while the distance between the passing cars upon said two tracks was about three feet nine inches.

Kusee was the only eyewitness to the accident, unless Martin be so treated. Martin was walking out Preston street, and when he reached the railroad crossing at Knapp street, he found the guards down and the freight train going east on the south track. While waiting for the freight train to pass he saw the passenger train coming from the east, and said that as he looked at the passenger train "there was something seemed to flash up, in the glare of the headlight, like; seemed like a man either jumped, or was knocked off." He says the train did not whistle, and that it passed on westwardly to the Tenth Street Station.

The train did not stop after it struck Shoemake, for the reason, given by Speaker the engineer, that he did not know the engine had hit anybody, and did not learn that Shoemake had been struck until after he had ended his trip at the round house, about twenty minutes later.

Speaker, the engineer, testified that he saw a man on the track walking towards the engine, and between the rails of the northbound track, about 180 or 200 feet in front of the engine. Speaker says he blew his whistle and gave the alarm with several successions of loud, short blasts of the whistle, and reduced the speed of the train from eight to about six miles an hour; and that the man then stepped right off the track on to the space between the two main tracks.

Evidently, Shoemake was struck on the side of the head by the pilot beam of the passenger train, although Speaker thought he had fully cleared the track.

The engineer and the conductor of the passenger train say the automatic bell upon the engine was ringing and had been ringing ever since the train had passed St. Matthews, or Crescent Hill, points from four to six miles east of Preston street; and while there is uncontradicted evidence, from many witnesses, that the bell was ringing, several witnesses, who were standing near the railroad crossing at Preston street, have testified either that the whistle was not sounded, or that they did not hear it.

The train was on time; the headlight of the engine was in prime order; and, although the engineer and the conductor say the passenger train was running at a speed of from six to eight miles an hour, several of the bystanding witnesses said the train was running from eighteen to thirty miles an hour.

Appellant relies upon three grounds for a reversal.

(1) That its motion for a peremptory instruction should have been sustained because the plaintiff's evidence was insufficient to authorize a submission of the case to the jury; (2) that the court erred in admitting incompetent evidence offered by the plaintiff, and in rejecting competent evidence offered by the defendant; and (3) that the court erred in giving instructions 2 and 3 on plaintiff's motion, and in refusing to give instruction "B" asked by appellant.

In support of the contention that the appellant's motion for a peremptory instruction should have been sustained, it is urged with a good deal of force that the proof conclusively shows that Shoemake knew of the approach of the passenger train, and stepped from the track to a point between the north and south tracks, where he was struck because he had carelessly failed to step far enough from the track to be in a place of safety.

It must be admitted that the testimony of Kusee strongly tends to support this contention. The only evidence tending to contradict it is that of Martin, who was standing at Preston street, two hundred feet away; and the testimony of several other witnesses who say the engineer failed to sound the whistle after he saw Shoemake upon the track, thus showing negligence upon the part of the engineer.

The proof shows that Knapp street, which was entirely occupied by the railroad track, was a dedicated street of the city; and, if there should be any doubt of that fact, it is clearly made to appear that it was used by such a large number of pedestrians as to put the appellant upon notice that a lookout duty was necessary to prevent injury to trespassers upon the track.

It is argued, with great force, that since a city ordinance prohibited passenger trains from running within the city limits at a greater speed than twelve miles an hour, and the engineer, conductor and fireman say the train was running from six to eight miles an hour, that little or no credence should be given to the evidence of bystanders, who, being unfamiliar with questions of speed, say the train was running from eighteen to thirty miles an hour. This is a very plausible argument, and to reasonable men it would seem, perhaps, conclusive; but that was a question peculiarly for the jury.

There being evidence that the train was running at an unreasonable speed, upon a dark, drizzly night, over a public street that was constantly used by pedestrians, and

that the engineer failed to sound his whistle after he had discovered Shoemake upon the track, the determination of the question of appellant's negligence, and of Shoemake's contributory negligence, was for the jury.

The first instruction properly defined ordinary care and negligence.

The second and third instructions read as follows:

"No. 2. The court instructs the jury that it was the duty of the defendant, its agents, and employes operating its trains, at the time when plaintiff's intestate was killed, to keep a lookout for the presence of persons using its tracks as a foot passway and to operate the engine and train of cars at a reasonable rate of speed and give reasonably sufficient warning of its approach, to avoid injuring them; and if the jury believe from the evidence that the defendant's agents and employes in charge of its train at the time and place when plaintiff's intestate was killed, negligently failed to operate its engine at a reasonable rate of speed and keep a lookout for persons using the track and to give reasonably sufficient warning of its approach and by reason of the negligent failure of defendant's agents and employes in charge of its train to perform these duties, and plaintiff's intestate while using the track at said point and exercising ordinary care for his own safety was struck by its engine and killed, the law is for the plaintiff and the jury should so find."

"No. 3. If the jury find for the plaintiff they should award such a sum in damages as they believe from the evidence will reasonably compensate the estate of the decedent, Allie Shoemake, for the destruction of his power to earn money, not to exceed fifteen thousand dollars. In arriving at this the jury may take into consideration the age of decedent and the probable duration of his life."

The objection to the second instruction is that it fails to present appellant's defense that Shoemake knew of the approach of the train, and negligently failed to get sufficiently far from the track to escape from being struck by the engine. That was appellant's principal defense; and to present that defense appellant offered, but the court refused to give, instruction "B," which reads as follows:

"B. The court instructs the jury that if plaintiff's intestate, Allie Shoemake, had knowledge or warning of the approach of the train in time to get into a position of

safety, then it was not negligence on the part of defendant's agents or servants in charge of said train to fail to give warning of its approach if they did so fail to give such warning.''

It is the duty of the court to submit to the jury the respective theories of both the plaintiff and the defendant, provided they are sustained by any evidence, as was the case here. It did give the appellee's theory in the second instruction, but in refusing instruction "B" it wholly failed to present appellant's theory of the case. In this we think the court erred to the substantial prejudice of the appellant.

In L. & N. R. R. Co. v. King's Admr., 131 Ky., 347, we said:

"It has long been the settled rule that both the plaintiff and the defendant have the right to have their side of the case properly presented to the jury. The instructions given by the court in this instance did not comply with this requirement. The facts constituting the defendant's negligence were properly embraced in the instructions of the court, but the facts constituting contributory negligence on the part of the plaintiff's intestate—and therefore the defendant's main defense—were not presented to the jury in a clear, concise and specific manner. While the instruction offered by defendant was not technically correct, in that it did not require the jury to believe that plaintiff's intestate saw the red signal, or by the exercise of ordinary care could have seen it in time to have stopped the train, yet it was the duty of the court, when such instruction was offered, to prepare and give a proper instruction on that point. L. & N. R. R. Co. v. Harrod, 115 Ky., 877, 75 S. W., 233. The failure of the court to do this is reversible error.''

See also L. & N. R. R. Co. v. Crutcher, 135 Ky., 381; West Kentucky Coal Co. v. Davis, 138 Ky., 667; Jellico Coal Mining Co. v. Lee, 151 Ky., 53.

Upon another trial, if the proof be substantially the same, the court will, in lieu of the second instruction and instruction "B" asked by appellant, give the following instruction:

"No. 2. The court instructs the jury that it was the duty of the agents and employes of the defendant in operating the passenger train at the time Allie Shoemake was killed, to keep a lookout for the presence of persons using its tracks as a foot passway, and to run its train at a reasonable rate of speed, and to give reasonable warn-

ing of its approach to avoid injuring them; and if the jury believe from the evidence that said Shoemake was walking upon the north track of defendant, and that the defendant's agents and employes in charge of its train at the time and place when said Shoemake was killed, negligently failed to give him reasonable warning of the approach of the train by ringing its bell or sounding its whistle in time for him to get off the track before the train struck him, and he did not know of the approach of the train in time for him to get out of its way before it struck him, then the law is for the plaintiff and the jury should so find.

"But if the jury shall believe from the evidence that Shoemake knew of the approach of the train in time to get out of its way by the exercise of ordinary care, and undertook to do so but failed to get far enough from the track and by reason of this was struck and killed, the law is for the defendant and the jury should so find."

It is further contended that the last clause of the third instruction, which authorized the jury to take into consideration the age of the decedent and the probable duration of his life, was erroneous because it specifically called the jury's attention to certain facts. In this respect the third instruction was objectionable, although not sufficiently prejudicial of itself to justify a reversal. It will be omitted from the instruction upon another trial.

Instruction No. 4 asked by plaintiff, was properly refused, and instructions "A" and "C," asked by defendant, properly given.

The court improperly permitted the witness Harstein to say that the citizens of Louisville had a right to use Knapp street; that a person was likely to be blinded by meeting a train, with a large headlight, at night; and further, that the railroad track west of Preston street curves northwardly in going into the depot at Tenth and Broadway. This testimony was all incompetent. The dedication of a public street cannot be shown by the opinion of an individual that the citizens of the town had a right to use the street.

Furthermore, railroad companies are required to keep a headlight upon their engines at night, and it would be negligence if they failed to so equip their engines. By the admission of the testimony in question, the appellant was put in the position of being guilty of negligence in case it either provided or failed to provide its engine with an adequate headlight.

Finally, the accident having occurred east of Preston street, upon a track that was straight for fully four blocks, the fact that Knapp street was not straight west of Preston street had nothing to do with the case.

Upon another trial this testimony will be excluded.

For the errors indicated, the judgment is reversed, and the cause remanded for further proceedings.