## Price v. Kentucky Traction & Terminal Company.

(Decided September 30, 1924.)

## Appeal from Jessamine Circuit Court.

1.  Street Railroads—Motorman Must Keep Lookout and Keep Car
    Under Control.—It is duty of motorman of street car to keep
    lookout ahead for vehicles and to have his car under reasonable
    control.

2.  Street Railroads—Motorman's Negligence in Failing to Give
    Signals Held for Jury.—In action for injuries received when street
    car struck automobile crossing track, whether motorman was
    negligent in failing to give proper signals held for jury.

3.  Street Railroads—Motorman Required to Give Signals to Driver
    of Curtained Automobile.—Motorman seeing automobile with cur-
    tains slowly moving across track should have signaled his ap-
    proach.

MARTIN T. KELLY, LEWIS W. ARNETT and C. F. KELLY for
appellant.

JOHN R. ALLEN, WALLACE MUIR and JOHN H. WELCH for
appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Appellant, Jennie June Price, and five other young
ladies were driving in an automobile in Lexington on
their way to school on February 8, 1922, when the car
in which they were riding was suddenly and unexpectedly
struck from the rear by an electric car, belonging to the
appellee company, injuring appellant Price and the other
five girls, one of them to the extent that she later died.
This suit was brought by Miss Price to recover damages
for her injury and the court directed the jury, at the
close of appellant's evidence, to find and return a verdict
against her. Of this she complains.

It appears that Main street and Woodland avenue
intersect; that the car line runs along main street and
turns into Woodland. The accident happened on Wood-
land avenue early in the morning. The young ladies
had stopped their car in front of the residence of the
Misses Clark and sounded the horn as a signal for the
young ladies to come out and enter the car on their way

to school.   Two of the Misses Clark, as did Miss Wood-
ruff, answered the signal and came to the car.   Two of
them entered but one went back to get her gloves.   When
she came out again she did not see or hear an electric
car.   Once in the car the door was closed.   The curtains
were on.   Three of the young ladies sat on the front
seat and three on the rear.   They started the car very
slowly and as there were some automobiles parked on
the other side of the street they drove down about 50
feet on the right side of the street in order to turn.   The
automobile was traveling at a very slow speed as they
turned across the tracks of the company.   In making
the turn the driver, Miss Carlotta Herndon, glanced out
through the mica in the curtains to see if anything was
approaching.   She could only see a distance of about
25 or 30 feet up the track in the direction from which
the car came, and she says she did not see or hear the
electric car.   As they crossed the track the electric car
came up behind, striking the rear wheels of the automo-
bile, demolishing the car and causing the injuries we have
mentioned.   As the curtains were on the car no one inside
saw or knew of the approach of the electric car until the
crash came.   Persons riding on the street car at the
time did not observe the automobile on the track until
it was struck.   The automobile was carried, according
to the testimony of at least one witness, some thirty
to fifty feet along the track and one wheel was broken
down by the impact.   The five young ladies, now living,
all testify that they did not hear a signal from the elec-
tric car.   Passengers upon the street car as well as other
persons along the street testify they did not notice a
signal from the street car indicating that it was about to
collide with the automobile.

It is in evidence that the automobile gave signals
while it stood in front of the Clark residence immediately
before it started.   It is also shown by one or more wit-
nesses that the track of the electric company on Wood-
land avenue was straight and unobstructed and that
there was nothing to prevent the motorman in charge of
the electric car seeing the automobile as it came on the
track.   The young lady driving the car testified she did
not give any signal either with her hand or otherwise,

indicating she was about to turn across the track. This is about the substance of the evidence.

After carefully considering the case we have concluded that there is some evidence to show that the motorman gave no signal by bell or horn of his approach to the automobile on the track. He should have given such signal as well as applied the brakes and used such other means at hand as were reasonably necessary to stop his car in safety to its occupants before striking the automobile. He was more than 25 or 30 feet away at the time the young lady turned her car across the track. It was his duty to keep a lookout ahead for vehicles and have his car under reasonable control. Had he given a signal by bell or horn the car carrying the young ladies might not have entered on or driven across the track, for they were going very slowly; or, if they had already entered upon the track a signal from the electric car might have caused them to put on gas sufficient to carry the automobile off the track before the trolley could travel the intervening distance. The occupants of the automobile were entitled to this chance. This latter event is probable, for the evidence shows that the car was struck on its rear wheels and back, indicating that it had almost crossed the track, and it is probable that if the motorman had given a signal by bell or whistle the automobile would have speeded up and passed off the track. In view of the fact that the occupants of the automobile were enclosed by curtains and the rear of the car was to the approaching trolley, it seems but reasonable that the motorman whose duty it was to keep a lookout ahead should have given signals of the car's approach, and failing to do so, if he did so fail, and the evidence for appellants conduces to prove that he did, the company was liable. Having this view of the evidence, we are constrained to hold that the trial court erroneously directed a verdict for the defendant traction company, for which reason the judgment is reversed for new trial consistent herewith.

Judgment reversed. Whole court sitting, except Judge Settle, who is sick.