## Ohio Valley Electric Railway Company v. Payne.

(Decided January 31, 1928.)

### Appeal from Boyd Circuit Court.

1. Trial.—In action for damages for personal injuries sustained when street car ran over plaintiff, where evidence was sufficient to establish without contradiction that street car track was on street of town, it was not error for court to assume in his instructions that track was so located.

2. Street Railroads.—Street railway company owed duty to plaintiff, struck by automobile and thrown onto tracks while running to board car, of exercising ordinary care, which included maintenance of lookout when it was using portion of streets of city.

3. Street Railroads.—Plaintiff thrown onto street car tracks by automobile in an unconscious condition in front of on-coming street car was not "trespasser," since he was in the streets of city.

4. Appeal and Error.—In action against street railway company by
   one struck by automobile and thrown on track of on-coming street
   car, which ran over him, permitting plaintiff to testify after map,
   copies of judgments, and copies of defendant's franchise were
   introduced in his behalf, if error, under Civil Code of Practice,
   sec. 606, subsec. 3, prohibiting person from testifying after intro-
   ducing other testimony for himself, held harmless, where facts
   testified to were covered by other witnesses in his behalf.

MARTIN & SMITH for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This is the second appeal of this case. The first
opinion is found in 213 Ky. 590, 281 S. W. 523. The facts
are fully stated in that opinion. The case was there re-
versed because the court found that the motorman on the
street car which injured appellee did all he could to avoid
the injury after he discovered appellee's peril. It was
there held that appellant was not required to maintain a
lookout for persons who might be on the track. After the
mandate from this court had been entered, the appellee
filed an amended petition, in which he withdrew the state-
ment in the original petition that appellant maintains
and operates a line of railway paralleling the public high-
way through the town of Ceredo near the Ceredo-Kenova
High School, and that it maintains a stop known as
"Holt Stop" near the high school where the track of ap-
pellant is immediately adjoining the public highway. The
allegation in the original petition placed the track of ap-
pellant off of the street and adjoining the public high-
way. In lieu of that allegation, appellee substituted in
his amended petition the allegation that appellant main-
tains and operates a line of street railway in the public
street through the town of Kenova, in Wayne county, W.
Va., under a franchise so to do, and that the point where
appellee was injured was in the public street and in the
town of Kenova at a point where the public and the plain-
tiff had a right to be and where a lookout duty was due by
appellant in the operation of its cars. This amendment
had the effect of locating the accident in the town of
Kenova on a public street, and of locating the track of
appellant in the public street.

We are thus confronted with an entirely different
question from that which was presented on the former
appeal. If appellant owed a lookout duty to appellee,
there is enough evidence to take the case to the jury on

the question of whether such duty was performed. The serious question in the case is whether under the circumstances in this case the appellant was under the duty of maintaining a lookout. As incident to that question it is first necessary to determine whether the track of appellant at the point where the injury occurred is located on a public street. For the purpose of establishing that the track is located on a public street appellee introduced as evidence a certain map which was referred to in the testimony of the witnesses from time to time. A certified copy of a judgment of the Wayne circuit court in West Virginia, of date March 15, 1879, was introduced. This judgment is an amendment to the charter of the town of Ceredo. The boundary of that town at one point is a turnpike. Another judgment of the same court, of date August 5, 1879, was offered in evidence, showing that the corporate line of the town runs for some distance with the northern line of the turnpike. There was also offered in evidence by appellee a judgment of the same court, of date May 31, 1894, establishing the town of Kenova. The boundary line between the town of Ceredo and the town of Kenova is a common line and runs along the north side of the turnpike. The franchise of appellant, originally granted to Z. T. Vinson by the town of Kenova, was offered in evidence. The order granting the franchise confers upon appellant the right to lay its tracks and operate its cars on Beech street (former county road). The testimony of the witnesses shows that the turnpike referred to in the charter of Ceredo and the charter of Kenova was originally known as the Virginia-Jamestown turnpike. The boundary of the town of Ceredo is the north line of the turnpike, and, as the boundary of Kenova is the north line of the turnpike, the street which, according to the testimony of the witnesses, is Beech street, is in the town of Kenova. Some of the witnesses testified that the old turnpike was 60 feet wide, although they admitted they were testifying from reputation. The franchise granted by the town of Kenova under which appellant operates, conferred upon it the right to lay its tracks in Beech street. The track was laid in the year 1901. In the year 1909 Kenova improved Beech street by paving 20 feet. There is a curb between the paved portion of the street and that portion which appears to be occupied by the railway track. At some points the railway track is near the curb and at others

it is 6 or 8 feet away from the curb.  The ties for the railway track are laid on cinders and that portion of the street occupied by the railway track is not used by the traveling public, except perchance it is crossed occasionally.  When the cars are travelling in one direction, the passengers alight from the car on the opposite side from the paved portion of the street, and it is necessary for them to cross the street car track to get onto the paved portion of the street.

Appellant offered evidence tending to show that at the time the track was laid at this point there was a controversy with some one named Hord, who made some objections to the laying of the track.  One witness testified that he was under the impression that the railway company acquired some right from Hord, but he did not know whether there was any written contract and none was offered in evidence.

Counsel for appellant insist that the question as to whether the street car track was on the street should have been submitted to the jury, but we do not believe there was any conflict in the evidence on this point.  If the evidence was sufficient to establish without contradiction that the street car track was on the street, it was not error for the court to assume in his instructions that the track was so located.

It is insisted by counsel for appellant that, although the street car track may have been located on the street, no lookout duty was required of appellant, as the street is not built up and is in fact out in the country although it may be within the town limits.  The public does not travel on the street car track.  Appellant seems to take the position that a lookout duty was not required unless the presence of the people on the track could be reasonably anticipated at the particular point of the injury. On the other hand, counsel for appellee advances the argument that the streets belong to the public for their full width and length, and that every person has the right to use every portion thereof.  His argument is that it is the duty of a street car company using the streets of a city to maintain a reasonable lookout duty at all times because the public has the right to use the entire street.  He cites the case of Endicott v. Triple-State Natural Gas & Oil Co., 25 Ky. Law Rep. 862, 76 S. W. 516.  That was a case where the gas company was preparing to plant a pipe line for the transportation of natural gas.  It had excavated a trench in the street for a long distance, which

trench was about 3 feet deep and 15 or 20 inches wide. A person riding his horse on the street stepped into the excavation and as a result he was injured. The court said in that case, quoting, in part, from some authority not given:

> " 'Public highways belong to the public from side to side, and from end to end,' and must be kept safe for the purposes for which they were created; the mere fact that the appellee had a license to plant its pipe line and dig the trench for this purpose along the highway or in the streets of Eden did not exempt them from the duty of taking proper precautions to prevent injuries therefrom to persons using the street. The obligation remained on them to place proper barriers around their trench or lights along the excavation at such points and in such manner as to apprise persons using the streets of the existence of the excavation.''

It has been held that it is not only the duty of a city to exercise ordinary care to keep that part of its streets that have been set apart and are customarily used by the traveling public in a reasonably safe condition, but it must also exercise the same degree of care with respect to such parts of its streets as lie immediately adjacent to, or in the margin of, the traveled part. City of Lancaster v. Broaddus, 186 Ky. 226, 216 S. W. 373. There are a number of cases holding that cities are under the duty to exercise ordinary care to keep the untraveled portions of the street in a reasonably safe condition, but these cases are not exactly in point, so far as the case under consideration is concerned, but they do tend to show that, ordinarily, the law applicable to the paved portions of streets is also applicable to the unpaved portions.

The case of L. & N. R. R. Co. v. Redmon's Adm'x, 122 Ky. 385, 91 S. W. 722, is more nearly in point. The court there said:

> "Where the streets of a town or city are occupied by the tracks of a railroad company, the railroad and the public have mutual rights, and owe to each other reciprocal duties in the exercise and protection of such rights; it being the duty of those in charge of the train in such a state of case to use ordinary care to prevent injury to persons in the way of the train, by slackening its speed, giving the cus-

tomary signals of its approach, and keeping a constant lookout, and likewise the duty of persons using the street or railroad track over which the train has the right of passage to use the same degree of care in protecting themselves against collision with and injury from the train. But, while this is true, a railroad company may have the exclusive use of so much of its right of way within the corporate limits of a town or city as is not situated upon or immediately paralleled by streets, highways, or alleys, to the use of which the public are entitled, and especially is this true if the right of way be inclosed to prevent its use by the public.''

The case of Illinois Central Railroad Co. v. Johnson (Ky.) 115 S. W. 798, although cited by counsel for appellant appears to sustain the contention of counsel for appellee. It was there held that, if the track where the accident occurred was on a street which had been set apart by the town for the use of the public and was recognized by the town authorities as such, the railway company, without reference to the travel upon it, must take notice of the public right to use it and must take such precautions as are required to avoid injuring travelers without regard to the number of persons using the street. It is true the court held that there was no evidence showing that the place where the accident occurred was a street. Applying, however, the same reasoning in this case that we find in the opinion in that case, we cannot escape the conclusion that a street railway company owes the duty of exercising ordinary care which includes the maintenance of a lookout when it is using a portion of the streets of a city. The cases holding that a railway company owes no duty to a trespasser until after his peril is discovered has no application to this case. The appellee was not a trespasser as he was in the streets of the city. It is true that he was not on the street car track of his own volition, as he was struck by an automobile and thrown upon the track in an unconscious condition in front of the oncoming street car. If the motorman had been looking ahead, there is evidence to show that he would have discovered the peril of appellee in time to have avoided the injury. The instructions fairly presented the issues to the jury, which returned a verdict in favor of appellee for $5,000.

Complaint is made on the ground that appellee introduced in his behalf a map, copies of judgments, and copies of the franchise of appellant before he himself testified. It is true that subsection 3 of section 606 of the Civil Code of Practice contains the provision that no person shall testify for himself in chief in an ordinary action after introducing other testimony for himself in chief. There is considerable argument on both sides made by respective counsel on this point. We deem the matter of little importance in this case. The testimony of appellee was not very material to the issues. He was struck by an automobile, rendered unconscious, and thrown on the track in front of the car. He did not know how far away the car was at the time he was thrown on the track. Everything that he testified about was abundantly covered by other witnesses in his behalf, and, if his testimony should have been wholly eliminated, the verdict of the jury would not have been affected as it appears to us. It was held in the case of Barkley v. Bradford, 100 Ky. 304, 38 S. W. 432, that if a party was not prejudiced by the violation of this rule as to the introduction of evidence, a case would not be reversed for that reason. To the same effect is the case of L. & N. R. R. Co. v. Lucas' Adm'r, 30 Ky. Law Rep. 359, 98 S. W. 308. This error of the court, if it was an error, which we very much doubt, was not prejudicial to the rights of the appellant.

Upon the whole case we have reached the conclusion that the trial was free from prejudicial errors, and the judgment is therefore affirmed.

Judge Willis not sitting.