## Cincinnati, Newport & Covington Railway Company v. Rairden.

(Decided April 30, 1929.)

(As Modified, on Denial of Rehearing, November 19, 1929.)

GALVIN & TRACY for appellant.

OMER C. STUBBS and R. C. SIMMONS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

On November 29, 1927, Carl Gee was running an electric shop in Covington. In the afternoon of that day he directed Charles Brooks, Elmer Gee, Earl Rairden, and Kenneth Rairden to get in a truck and go out to Ft. Mitchell and work on a job there. Brooks was the head of the party and ran the truck. Kenneth Rairden and Elmer Gee sat on the seat with him. Earl Rairden was standing on the running board of the truck, holding to the truck with one hand. They first stopped at a bakery and bought four rolls and a pie. Each took a roll and began to eat it as they went along. Elmer Gee had the pie and was cutting it up after they had finished eating the rolls. Earl Rairden was standing on the running board with his face turned to the rear as they approached a street car on the curve. The truck was too close to the street car track, and Earl Rairden was killed, being crushed between the truck and the street car. This action was brought by his administrator against Carl Gee and the street car company to recover for his death. The jury found for the plaintiff against both the defendants, finding a verdict against Gee for $5,000 and against the street car company for $5,000. The street car company appeals.

It is insisted for the appellant that the court should have sustained its motion for a peremptory instruction, that the court misinstructed the jury, and that the verdict is palpably against the law and the evidence.

Kenneth Rairden states the facts thus:

"We were straddling the right car rail going out. The rail was about the middle of the body of the truck. I was joking with Earl Rairden when I looked up and saw a street car 12 feet from us. I shouted to Brooks and he jerked the machine right on the side and the street car caught us. I jumped

and ran back and picked up Earl. He was lying just a few feet back of the truck. As I looked up I saw the motorman and another man standing alongside of him and he threw up his hands and stepped back and threw off glass from him. The car ran more than a car length 'before it was stopped.''

Brooks, the driver of the truck, testified:

''The two left wheels of the truck were over on the right side of the car track. The street was rather rough over on the right of the track, that is the reason I was in that position. I noticed the car farther up the street and I turned off the tracks completely. I was off about 2½ feet. As the car swung around the curve it struck the truck just above the middle and from there straightened itself out and passed on down the street.''

Elmer Gee testified:

''My head was down and when I looked up the street the car was swinging on the 'bend and the part of the street car that sticks out struck the truck. We were clear of the car tracks. The overhanging of the car is what hit the truck.''

The motorman testified:

''The truck was running at a pretty good gait of speed. I saw it about 60 feet away. It was then about 3 feet to the right of the rail. When he got within 12 or 15 feet of the car he ducked into the car; there was a boy standing on the running board and it mashed him between the car and the truck.''

Two gentlemen who were in a car following the truck testified that the truck was running very fast; running zigzagging, first across the track and then back again; and when he was close to the car or about 15 feet, he turned his wheels towards the curb and the collision followed. They had noticed the truck zigzagging on the street car track some distance before the collision. A number of witnesses testified that the second window from the front, on the side of the car, was broken in the collision, and that this was the only thing broken about the car.

On the other hand, the proof for the plaintiff was, in substance, that the door of the truck was broken and

other parts around the front, and that there was a dent in the middle of the truck where the street car hit it. The car was running about 10 miles an hour. Brooks says that he was running 10 or 12 miles an hour and that he saw the car when he was 100 feet away. Other witnesses say that he was running about 20 miles an hour.

It is earnestly insisted for appellant that under the evidence the death of Earl Rairden was due wholly to the negligence of Brooks, the agent of Gee, who was in charge of the truck. There is much in the evidence to sustain this conclusion. But the rule is, if there is any evidence the question is for the jury. While the motorman had a right to assume that the driver of the truck would keep out of his way, until in the exercise of ordinary care he should have known the contrary it was the duty of the motorman to keep a lookout for other vehicles on the street and to exercise ordinary care for their safety. Although the street car could not get out of the way of the truck and it was the duty of the truck to keep out of the way of the street car, the motorman was not authorized to omit ordinary care for the safety of the persons on the truck when he became aware, or in the exercise of ordinary care should have become aware, of their danger. For the duty to maintain a lookout means that due care must be used to avoid a danger that a proper lookout would disclose, and the motorman must be held to know what a man of ordinary care would know if he kept a lookout. The proof is clear that the truck was running zigzag, first on the street car track and then off of it. There was no vehicle in the way. The motorman's view was entirely unobstructed, and there was no reason why the motorman should not see the truck as soon as the truck saw him. The motorman knew as well as any one else how far the car would overhang the rail in going around the curve. If the proof for the plaintiff is true, it cannot be said that there was no evidence of negligence on the part of the street car motorman, for if the truck was zigzagging, as described by the evidence, it was a question for the jury whether in the exercise of ordinary care he should have given notice of the danger by sounding his gong or should have checked the speed of the car before he got within 12 feet of it. The court, therefore, did not err in ruling that the evidence of defendant's negligence was sufficient to take the case to the jury.

But it is insisted, as a matter of law, that the contributory negligence of decedent was such as to preclude a recovery by the plaintiff. Rairden was riding on the running board of the truck, with his back to the approaching street car, engaged in eating a roll. He was holding on with one hand and eating out of the other. It is not negligence as a matter of law to ride on the running board of a car. It was for the jury to determine whether the conduct of Rairden in so riding and eating constituted contributory negligence, but for which the accident would not have happened. Paducah Ry. Co. v. Nave's Adm'r, 204 Ky. 733, 265 S. W. 289; R. B. Tyler Co. v. Kirby's Adm'r, 219 Ky. 389, 293 S. W. 155.

In Louisville & I. Railway Co. v. Bedford's Adm'r, 203 Ky. 583, 262 S. W. 941, relied upon by appellant, a peremptory instruction for the defendant was directed by this court. In that case, however, the plaintiff's decedent was driving the automobile that collided with the interurban car. The court found from the uncontradicted testimony that the death of the driver resulted solely from his own carelessness in driving head-on against the approaching interurban car. Manifestly that case, in all of its essential facts, is different from this one.

It is next insisted that the verdict is flagrantly against the evidence. The evidence was in sharp conflict. There was evidence for the plaintiff which tended to show that the decedent's injuries were caused by the concurring negligence of the two defendants. The evidence for the street car company tended strongly to show that the whole cause of the accident was the neglect of Brooks, the driver of the truck. The evidence for its codefendant tended to show that the fault was on the part of the motorman of the street car. We need not repeat the statements of the evidence already made, but as a whole it was sufficient to sustain the finding of the jury to the effect that both the defendants were to blame. Whilst that conclusion has been severely criticized in the very able brief for appellant, our careful consideration of the record convinces us that the verdict may not be disturbed on the ground of insufficient evidence. The jury is the tribunal that must determine issues of fact, and its finding on conflicting evidence is conclusive upon this court.

The court gave the jury 10 instructions, but complaint is made only of those numbered 1, 2, and 4. Instruction No. 1 submitted in general terms the question

of contributory neglect on the part of plaintiff's decedent, but added that, notwithstanding such contributory neglect, if the motorman failed to exercise ordinary care to avoid the accident after discovery of the peril of the decedent, the defendant would be liable. Instruction No. 2 advised the jury properly as to the duties of the motorman. It is insisted that no reason existed for that portion of the instruction relating to the motorman's duty to give notice by the usual and customary signal of the approach of the car, because the driver of the truck was aware of the fact. There was some evidence that the driver was unaware of the car until it was very close to him; but, if it be assumed that no signal was due the driver of the truck, the fact remains that the court was defining the duties due the decedent, and there was evidence sufficient to require the court to give that instruction. Roseberry v. Louisville Ry. Co., 168 Ky. 277, 181 S. W: 1117; Doll v. Louisville Ry. Co., 138 Ky. 488, 128 S. W. 344; Price v. Ky. T. & T. Co., 207 Ky. 332, 269 S. W. 303.

It is also argued that the court should have given instruction A, offered by the defendant, in lieu of instruction No. 1. The offered instruction submitted the issue of discovered peril, substantially as did the instruction that was given, but it contained a prelude respecting the right of the motorman to assume that the driver of the truck would yield the right of way to the street car until he knew that it would not do so. Instruction B, offered by the defendant, also contained the idea that the motor man had a right to assume that the truck would get out of his way until he knew the contrary. Instruction No. 1, as given by the court, must be read in connection with instruction No. 3, also given by the court, by which the jury was advised that the railway company was entitled to the use of its tracks for the free passage of its car, and instruction No. 4, also given by the court, which advised the jury that the motorman had the right to assume that the driver of the truck would get out of the line of travel of the street car until he knew, or by the exercise of ordinary care should have known, that he would not do so. The issues involved in the case were properly submitted by the instructions given, and there was no idea contained in the rejected instructions A and B, or suggested by them, that was not embraced in the instructions given. It is clear, therefore, that there was no error in the instructions. South Covington & C. St. Ry.

Co. v. Cleveland, 100 S. W. 283, 30 Ky. Law Rep. 1072, 11 L. R. A. (N. S.) 853; Louisville Ry. Co. v. Hutchcraft, 127 Ky. 531, 105 S. W. 983, 32 Ky. Law Rep. 429.

Complaint is further made that the court refused to give instructions C, D, H, I, and J. Instruction C simply told the jury that, if they believed from the evidence that the truck upon which decedent was riding was driven into or against the street car, they should find for the defendant. Such an instruction was manifestly inappropriate. The phase of the evidence covered by it had to be considered in the light of the other evidence, and, even though the truck was driven into or against the street car, the street car company was neverthless liable, if it was negligent in the respects defined by the instructions given to the jury. Instruction D offered by the defendant, exonerated the street car company if the driver of the truck was to blame for the collision. The jury was not authorized to find against the street car company, unless its negligence, concurring with the negligence of its codefendant, was a proximate cause of the misfortune; but the fact that the driver of the truck was also negligent did not excuse the street car company. The basis of plaintiff's case was that both defendants were negligent, and the plaintiff had a right, under the evidence, to have that issue submitted to the jury. Ohio Valley E. Ry. Co. v. Payne, 223 Ky. 197, 3 S. W. (2d) 223.

The other instructions offered by the defendant related to the question of contributory neglect on the part of the decedent. It was the theory of these proposed instructions that it was contributory negligence as a matter of law for the decedent to continue without protest to ride on the running board of the truck, if it was driven in a dangerous and reckless manner. They presented also the idea that riding on the running board of the truck under all the conditions and circumstances shown, constituted such contributory negligence as to defeat a recovery. It is argued that the appellant was entitled to have its theory of the case submitted to the jury in concrete form, and that the general instruction on contributory negligence was insufficient for that purpose. Stearns Coal Co. v. Williams, 171 Ky. 49, 186 S. W. 931; Cumberland Ry. Co. v. Girdner, 174 Ky. 763, 192 S. W. 873; Consolidation Coal Co. v. Spradlin, 173 Ky. 229, 190 S. W. 1069.

What constitutes contributory negligence is a question of law for the court, but whether the facts essential

to that defense were proven is a question for the jury. Unless the act itself, or the several acts together, constitute contributory negligence, the jury may not be so directed. Jellico Coal Min. Co. v. Lee, 151 Ky. 53, 151 S. W. 26. Whether certain conduct is demanded by the standard of ordinary care is often a question for the jury. Peerless Coal Co. v. Copenhaver, 165 Ky. 196, 176 S. W. 1002. In Consolidation Coal Co. v. Spradlin, 173 Ky. 229, 190 S. W. 1069, the defense was that the injured person had disobeyed specific instructions. If he did so, he was necessarily negligent. Therefore it was proper to tell the jury, if the plaintiff disobeyed the directions, he could not recover. In Chesapeake & O. v. Warnock, 150 Ky. 74, 150 S. W. 29, the court gave a general instruction on contributory negligence. The concrete instruction requested was that, if the decedent knew the train was approaching and with such knowledge undertook to cross the track in front of it, he could not recover. It was proper under the evidence in that case, to give the concrete instruction, because the fact embraced in it, if it existed, constituted a defense as a matter of law. In Louisville & N. R. R. Co. v. King, 131 Ky. 347, 115 S. W. 196, the issue was whether decedent, after seeing a red light, failed to stop his train. If he did so, he was guilty of contributory negligence. The same principle was applied in Louisville & N. R. R. Co. v. Shoemake's Adm'r, 161 Ky. 746, 171 S. W. 383. Cf. Osborne v. Holtzclaw, 193 Ky. 805, 237 S. W. 658.

But riding on the running board of the truck, in the way he did, as we have already shown, did not necessarily constitute contributory negligence. Neither did the failure of the decedent to get off of the truck, because it was negligently operated. He was not in position to see what was going on or to exercise any control over the driver of the truck, and the evidence does not show that he was negligent as a matter of law in remaining on the truck under the circumstances. Therefore the rejected instructions did not embody a correct statement of the law. It was for the jury to say, under the evidence, whether the conduct of the decedent under the conditions was the exercise of ordinary care for his own safety. There was no error in refusing further instructions. Those given fairly left it to the jury to determine the issues of negligence on the part of the defendants, and that of contributory negligence on the part of plain-

150

tiff's decedent. Louisville Ry. Co. v. Mitchell, 138 Ky. 190, 127 S. W. 770; Ohio Valley E. Ry. Co. v. Payne, 223 Ky. 197, 3 S. W. (2d) 223.

On the whole record, we are constrained to the conclusion that the appellant had a fair trial.

Judgment affirmed.