Louisville & Nashville R. R. Co. v. King's Admr.

CASE 38.—DEATH ACTION BY BARTLEY KING, ADMINIS-
TRATOR OF W. T. KING, AGAINST THE LOUIS-
VILLE & NASHVILLE RAILROAD CO.—January 15.

# Louisville & Nashville R. R. Co.
## King's Admr.

Appeal from Bullitt Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff, defendant appeals—Reversed.

1   Master and Servant—Action for Death of Servant—Sufficiency
of Evidence.—In an action against a railway company for the
death of a conductor, evidence held sufficient to go to the
jury.

2.  Trial—Instructions—Singling Out Evidence.—In an action for
the death of a conductor of a work train from the throwing
of a switch while his train was passing over it, where defend-
ant's theory was that those in charge of the work train had
signaled for the switch, that the operator ra¹~ed the danger
signal signifying that the switch was to be thrown, but that
decedent, though the train was several hundred feet away,
negligently ran it into the switch in the face of the signal,
requested charge that if, before decedent approached the
point where he was injured, the signal had been given which
required him to stop his train before reaching that point,, and

he saw the signal, or by ordinary care could have seen it, and failed to obey it, verdict should be for defendant, was not objectionable as singling out certain evidence, but it merely grouped the facts constituting defendant's defense of contributory negligence.

3. Trial—Instructions.—The requested charge was not covered by charges that defendant had the right to establish and enforce reasonable rules and regulations for the government of its employes, and that if the injury was occasioned by decedent's negligence, and would not otherwise have occurred, or if it was occasioned by his failure to obey the rules for government of his train, verdict should be for defendant, they being merely abstract propositions, while the refused charge brought out the exact facts which, if true, would constitute contributory negligence of plaintiff.

4. Trial—Instructions—Form.—The modern tendency is to depart from the former practice of giving general or abstract instructions, and to charge in as specific and concrete a form as possible.

5. Trial—Instructions—Purpose.—The purpose of instructions is to present to the jury the issues in the most intelligible form.

6. Trial—Instructions—Rights of Parties.—Both parties have the right to have their sides of the case properly presented to the jury.

7. Trial—Erroneous Requests—Duty of Court to Correct and Charge.—Where a refused charge as to decedent's contributory negligence was not technically correct, yet it was the court's duty when the charge was offered to give a proper charge on that point.

8. Death—Punitive Damages—Grounds.—If decedent in charge of a train had no intention of taking a switch which was thrown but intended to take one further on, and had given no signal for the first switch, and defendant railway company s operator, without giving a danger signal or giving it so late that the train could not have stopped, threw the first switch, and derailed some of the cars, negligently killing decedent, punitive damages were recoverable.

CHARLES CARROLL, CHAS. H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

### POINTS DISCUSSED.

1. Appellee's theory of the case is that King's death was due solely to the negligence of the person who threw the switch

Louisville & Nashville R. R. Co. v. King's Admr.

and thereby derailed the caboose on which King was riding. Appellant's theory is that King's death was due to his own failure to see and heed the red board (danger signal) which was displayed against his train while it was at such distance from the switch that King could easily have stopped, and should have stopped, the train before it reached the switch, and thus have prevented the accident; (2) and appellant further contends that the testimony makes it so plain that but for King's said negligence the accident could have been averted; that it was the duty of the court to instruct the jury, as matter of law, that King's contributory negligence barred a recovery for his death, as appellant requested the court to do. (3) Having improperly refused to instruct the jury to find for appellant, it was obviously the duty of the court to instruct the jury as definitely and specifically as to appellant's theory of the case as the court did with reference to appellee's theory. This the court refused to do.

2. The closing argument made to the jury by appellee's counsel was highly prejudicial to appellant in going outside of the record and in misstating and misapplying the facts shown by the record. (2) The court should have sustained appellant's motion to discharge the jury; (3) having refused to do so, then the court ought to have admonished the jury, definitely and specifically, instead of doing so only in 'very general terms.

3. The court erred in authorizing the jury to award punitive damages.

## AUTHORITIES CITED.

L. & N. R. R. Co. v. Mounce's Admr., 28 Ky. Law Rep., 933; Id v. Harrod, 115 Ky. on p. 882; Tully v. L. & N. R. R. Co., 30 Ky. Law Rep. 87, 97 S. W. 417; 46 Am. Digest, Col. 1658, and cases there cited; 47 Id., Col. 712; Philadelphia, &c., R. R. Co. v. State, 66 Md. 501, 8 Atl. 272; R. & D. R. R. Co. v. Pickleseimer, 10 S. E. 44; T. & P. Ry. Co. v. Huber, 95 S. W. 568; Sou. Const. Co. v. Hinkle, 89 S. W. 300; M., K. & T. Ry. Co. v. Renfro, 83 S. W. 21; Galveston, &c., R. Co. v. De Castillo, 83 S. W. 25; Poole v. Con. St. Ry. Co., 100 Mich. 379, 59 N. W. 390, 25 L. R. A. 744; Rhoades v. C. & O. R. R. Co., 49 W. Va. 494, 39 S. E. 209; Irwin v. Atkins, 12 Ill. App. 431; Chicago Heights Land Assn. v. Butler, 55 Ib. 461; Comstock v. Norton, 36 Mich. 277; Defoe v. St. Paul City Ry. Co., 68 N. W. 35; Hancock v. Stout, 44 N. W. 446; Babbitt v. Bumpus, 41 N. W. 417; 16 Am. St. Rep. 585; Chicago Union Traction Co. v. Hansen, 125 Ill. App. 153; Allen v. Durham Traction Co., 56 S. E. 942; Carroll v. Commonwealth, 29 Ky. Law Rep. on p. 34; State v. Julow, 31 S. W. 781,

Louisville & Nashville R. R. Co. v. King's Admr.

129 Mo. 163; United States v. Adair, 208 U. S. 161, 175; McHenry Coal Co. v. Sneddon, 98 Ky. 684; I. C. R. R. Co. v. Jolly, 119 Ky. on p. 456; Darrell v. Commonwealth, 96 Ky. Law Rep. 541; L. & N. R. R. Co. v. Carter, 27 Ky Law Rep. 748; Id. v. Smith, Ib. 257; Murphy's Exor. v. Hoagland, et al 107 S. W. 303, 32 Ky. Law Rep. 839; L. & N. R. R. Co. v. Crow, 107 S. W. 802, 32 Ky. Law Rep. 1145; Id. v. Reaume, 107 S. W. 290, 32 Ky. Law Rep. 946; Id. v. Gaddie, 31 Ky. Law Rep. 502; Id. v. Berry, 111 S. W. 370; Id. v. Mount, 31 Ky. Law Rep. on p. 213 and cases there cited; I. C. R. R. Co. v. Lence, 30 Ky. Law Rep. 988; Southern Ry. Co. in Ky. v. Lee, by, &c., Ib. 1360; Id. v. Brewer, 32 Ky. Law Rep. 1374; Covington Saw Mill & Mfg. Co. v. Drexilius, &c., 120 Ky. on pp. 502, 503.

BENNETT H. YOUNG for appellee.

"The court can not afford to take notice of all remarks of counsel that are not strictly within the record. There is a latitude allowed in oral argument." (119 Ky. 456.)

We respectfully submit that the record in this case does not show any such conduct on the part of counsel as justifies a reversal of this case on that ground. If the party was entitled to a verdict at all, no body will say that the verdict was excessive. Counsel did not make any insistence upon this court, for the size of the verdict shows that there was not even compensation allowed appellee. Eight thousand dollars for the life of a young man, thirty-three years of age, and making $120.00 a month, is under, not over the mark.

In the case of the Louisville Railway Company v. Brownfield, —— Ky. Law Rep. 1098, the questions concerning matters of this kind were fully discussed and decided, and under the opinion in that case we do not feel that there could be any claim of misconduct of counsel in this matter, and certainly none such, as under the law, requires a reversal.

We respectfully submit that there is no ground for a reversal by this court; that the defendant had all the instructions that it was entitled to have, and that the misconduct of counsel charged was rather an exaggeration of the wounded feelings of counsel for appellant, rather than any real injustice which was done in this case by a verdict of the jury.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

Bartley King, as administrator of W. T. King, instituted this action against the Louisville & Nashville Railroad Company to recover damages growing out of the death of the decedent. The jury awarded plaintiff damages in the sum of $8,000. From the judgment based thereon the railroad company prosecutes this appeal.

A reversal is asked upon three grounds: First, the failure to give a peremptory instruction in favor of defendant; second, misconduct of counsel; third, the refusal of the court to give an instruction offered by defendant.

The facts in the case are as follows: W. T. King at the time of his death was an employe of defendant, acting as conductor of a work train which was being operated in the vicinity of Bardstown Junction, in Bullitt county. Bardstown Junction is the point at which appellant's Bardstown and Springfield branch road diverges from the main line of its railway. For a considerable distance north and south of Bardstown Junction the defendant road is double tracked. About 4 o'clock on the afternoon of July 15, 1907, the work train of which King was conductor was stationed on the south-bound main track, a few hundred yards north of Bardstown Junction. It was necessary to move this train to permit the passage of a through train bound southward from Louisville. With this object in view, the work train was backed south on the south-bound main track with the intention on the part of those in charge of the train to switch it into what is known as the "Y track." While the train was

backing south, King, the conductor, and Ryan, the rear flagman, were stationed upon the rear platform of the caboose, which at that time was the leading part of the train. Just as the caboose passed over the north switch connecting the main tracks with the Bardstown and Springfield branch, the switch was thrown under the caboose, or the car next to it, and both were derailed. King was thrown from the platform and instantly killed. The switches at Bardstown Junction are manipulated by levers from the office of the company's station agent. The depot is but a short distance south of the switch that was thrown under the work train. Upon the occasion in question, the levers were operated by a young man named Louis Crigler, who held the position as assistant agent. According to the testimony for plaintiff, there was no purpose upon the part of those in charge of the work train to take the switch at the place of the accident. They intended to go further down the track and enter the Y where the switch was operated by trainmen, and not from the office of the station agent. At the time Crigler threw the switch he did not know what the work train crew proposed doing, and there was therefore no necessity for throwing the switch. Defendant's defense consisted of general denials of the allegations of the petition and a plea of contributory negligence. According to its evidence, there were a number of levers in the depot which it was necessary to operate in order to change the various tracks and switches and give the various signals required at that point. None of these levers, which controlled the signal board or switches at that point, could be moved until the lever which controlled the signal board indicating the danger or stop signal was operated. After the danger

stop signal was given, then the other lever used to operate the switches and cross-tracks could be moved. Upon the occasion in question the signal was given that the train upon which plaintiff's intestate was conductor was coming down the south-bound main track for the purpose of crossing over to the main branch of the Springfield line. When this signal was given, the agent's assistant immediately moved the lever which controlled the danger signal. This was a signal to plaintiff's intestate that the switches were being moved, and not to bring his train toward the switch until the switch was moved, the red signal lowered, and a safety, or white signal raised. The red signal was raised at a time when the work train was several hundred feet from the switch, and in plenty of time for the train to have been stopped. Plaintiff's witnesses denied that the red signal was raised. We have not attempted to give the evidence in detail, but suffice it to say there was abundant evidence upon which to submit the case to the jury, and the court did not err in refusing to give a peremptory instruction in favor of the defendant. In view of the fact that we have determined to reverse this case on other grounds, it will not be necessary to consider the alleged misconduct of counsel.

Appellant's main ground for reversal is the failure of the court to give the following instruction: "(a) If the jury believe from the evidence that, before plaintiff's intestate approached the point where he received the injury which resulted in his death, the signal had been given which required him to stop his train before reaching that point and that said plaintiff's intestate saw said signal, or by the exercise of ordinary care upon his part could have seen it, and failed to obey same, and said failure resulted in the

injury which caused his death, they should find for the defendant.'' Counsel for appellee insist that this was unnecessary because the question covered by the instruction offered was fully presented in instruction 7 and 8, which are as follows:

"No. 7. The court instructs the jury that the defendant railroad company has the right to establish and enforce reasonable rules and regulations for the government of its employes in the management and operation of its trains.

"No. 8. The court instructs the jury that if they believe from the evidence that the injury which occasioned the death of plaintiff's intestate was occasioned by his own negligence and careless conduct, which conduct so contributed to said injury that without which same would not have been received, they should find for the defendant, or, if the jury believe from the evidence that the injury which occasioned the death of plaintiff's intestate was occasioned by his failure to observe and follow the rules and regulations for the government of the train under his charge, they should find for defendant."

Counsel for appellee further insist that the instruction offered is erroneous because it particularized and singled out certain evidence. It was plaintiff's theory that those in charge of the work train did not intend to take the switch at the point of the accident and had given no signal for the switch in question; that there was, therefore, no occasion for throwing the north switch, and that such switch ought not to have been thrown; that the red signal was not raised, but, if raised, it was raised when the caboose was so near the switch that the train could not have been stopped; that the accident, therefore, resulted solely from the negligence of defendant's agents. The defendant's

theory of the accident was that those in charge of the work train gave a signal for the north switch; that the operator immediately raised the danger signal at a time when the train was several hundred feet from the switch; that plaintiff's decedent was negligent in running the train into the switch in the face of a danger signal, and this negligence on his part was the cause of his death. Instruction "a," offered by defendant, is not, we think, subject to the criticism that it particularizes or singles out certain evidence. It grouped all the facts constituting defendant's defense of contributory negligence. The only question, then, is whether or not instruction 7 and 8 sufficiently presented the idea contained in the instruction offered. While instructions 7 and 8 may be abstractly correct and founded upon the facts adduced in evidence, they are not sufficiently definite and certain to present to the jury the defendant's side of the case. They do not impose upon plaintiff's intestate the duty of exercising ordinary care to discover the red signal, if the same had been raised. That being the case, the instructions given were not sufficient to cover the question presented by the instruction offered. The instructions given were general in form, and left it to the jury to determine without any definite directions for their guidance what constituted contributory negligence. The instruction refused brought clearly to the minds of the jury the exact facts which, if true, would constitute contributory negligence on the part of the plaintiff.

It may be conceded that for a long time it was the practice to give instructions in a general or abstract form, just so the facts in evidence justified the giving of such instructions. The tendency of the modern decisions, however, is to give the instructions in as

specific and concrete a form as possible. Lexington
Ry. Co. v. Van Laden's Adm'r, 107 S. W. 740, 32 Ky.
Law Rep. 1047; Lexington Ry. Co. v. Woodward,
106 S. W. 853, 32 Ky. Law Rep. 653; Southern Ry.
Co. v. Buckner (Ky.) 113 S. W. 90; Lou. Ry. Co. v.
Gaar, (Ky.) 112 S. W. 1130; Julius Goldstein's
Adm'r v. Lou. Ry. Co. (opinion delivered January 13,
1909) 115 S. W. 194. As the purpose of pleadings is
to lead to an issue, the purpose of instructions is to
present that issue in the form most intelligible to the
jury. It cannot be doubted that if the court embraces
in one instruction the facts constituting the defend-
ant's negligence, and in another instruction facts
which, if true, would constitute contributory negli-
gence upon the part of the plaintiff, the jury can
better determine the exact question to be decided. It
has long been the settled rule that both the plaintiff
and the defendant have the right to have their side of
the case properly presented to the jury. The instruc-
tions given by the court in this instance did not com-
ply with this requirement. The facts constituting the
defendant's negligence were properly embraced in
the instructions of the court, but the facts consti-
tuting contributory negligence on the part of the
plaintiff's intestate—and therefore the defendant's
main defense—were not presented to the jury in a
clear, concise, and specific manner. While the in-
struction offered by defendant was not technically
correct, in that it did not require the jury to believe
that plaintiff's intestate saw the red signal, or by the
exercise of ordinary care could have seen it in time
to have stopped the train, yet it was the duty of the
court, when such instruction was offered, to prepare
and give a proper instruction on that point. L. &
N. R. R. Co. v. Harrod, 115 Ky. 877, 75 S. W. 233.

The failure of the court to do this is reversible error. Upon the next trial of this case, in lieu of instruction "A" offered by defendant, the court will give the following instruction: "If the jury believe from the evidence that before plaintiff's intestate approached the point where he received the injury which resulted in his death the signal had been given which required him to stop his train before reaching that point, and that said plaintiff's intestate saw said signal, or by the exercise of ordinary care upon his part could have seen it in time to have stopped the train, and failed to obey same, and said failure resulted in the injury which caused his death, they should find for the defendant."

Defendant further insists that the court erred in giving an instruction authorizing punitive damages. We are of opinion, however, that, if plaintiff's theory of the case be true, there can be no doubt of the propriety of permitting a recovery of punitive damages.

For the reasons given, the judgment is reversed for proceedings consistent herewith.

NUNN, J., dissenting.