## Consolidated Coach Corporation v. Bryant et al.
## Same v. Jolley's Administrator.
(Decided April 30, 1935.)

R. W. KEENON, TYE, SILER, GILLIS & SILER and STOLL, MUIR, TOWNSEND & PARK for appellant.

STEPHENS & STEELY and JOHN T. DENNIS for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

These actions were tried and heard as one; therefore, we shall dispose of them in one opinion.

United States Highway No. 25 West runs from Cincinnati, Ohio, to Knoxville, Tenn., passing through Corbin and Williamsburg, Ky., and Jellico, Tenn.

Prior to June 23, 1933, a short distance north of the Gatliff Fish Hatchery, about four miles north of Williamsburg, this highway had been newly constructed in part and reconstructed as to other parts. Going north from Williamsburg across the Cumberland river hills, the road, originally, was noted for its hairpin curves. To rid it of these, a cut had been made through the Cumberland river cliffs on practically a straight line. Thus the old road up to the Gatliff Fish Hatchery had been straightened and widened.

Joe Jolly, an employee of the contractor, as operator of a gas shovel which he had been using in this roadwork, delivered it at the completion of the day's work at a nearby railroad siding and parked it with other construction tools. The new construction of the portion of the highway on which he had been employed prevented the speed of motor vehicles. On the night of the day on which he had completed his services, he and Angeline Bryant, a resident of Williamsburg, and Earl Walker traveled the highway in an automobile to Gatliff Fish Hatchery, thence east about one-half mile to the home of Lay to get his daughter to go riding with them, and as a companion of Earl Walker. Lay's daughter was not permitted to go. Then they returned to the highway, traveled north, stopping at Faulkner's store, at Wafford, where Walker left the car; Joe and Angeline agreeing they would pick him up on their way

back to Williamsburg. Jolly discovered the gas in the automobile was running low. For this reason they traveled toward Williamsburg to a gas station. It was out of gas. They then went to the place where he had parked the shovel and obtained gas and drove north a short distance, when they decided to return home. From this point they traveled south in the direction of Williamsburg. When they reached a point north of the railroad crossing at Wafford, Stinson Taylor and Ola Smith, who were traveling in a car, passed them—the girls waving and "hollering" at each other. This point is seven-tenths of a mile north of the place of the accident in which Jolly was killed and Angeline Bryant sustained injuries. The Taylor and Smith car soon outdistanced that of Jolly and Bryant, and disappeared. Jolly and she, having agreed to pick up Earl Walker at the fish hatchery upon their return, traveled slowly and sounded the horn a number of times as a signal that they were arriving. Henry Pace and wife resided close to the highway and near the point at which the signals were given.

The basis of this action is that near the home of Pace, about or after 10 o'clock, the Jolly car met the regular night bus of the Consolidated Coach Corporation on its run from Knoxville to Cincinnati, and that it was so negligently operated that it caused the Jolly car to leave the highway, run over an embankment, killing Jolly, and slightly injuring Angeline Bryant. The defenses of the Consolidated Coach Corporation are a traverse and a plea of contributory negligence.

The sharp, determinate issues are, was the proximate cause of the Jolly car leaving the highway the negligence of Jolly or that of the driver of a bus or a truck, and if it was a bus, was it the bus of the Consolidated Coach Corporation. To these issues the evidence of the parties was directed. That of Bryant and the administrator of Jolly tends to establish that the operation of a bus was the proximate cause of the Jolly car leaving the highway, and that it was the bus of the Consolidated Coach Corporation. That of the Consolidated Coach Corporation tends to exonerate it of liability and to show that the death of one and the injuries of the other were caused by a truck, or, if it were a bus, it was not one owned and operated by the Consolidated.

Coach Corporation, but that of some other corporation running over that road on that night as a special.

For Jolly's estate a verdict of $8,000 was returned, and for Angeline Bryant, $500.

The Consolidated Coach Corporation is here urging that the court erred in overruling its motion for a peremptory instruction at the conclusion of the testimony in behalf of Bryant and the administrator, and also at the conclusion of all of the testimony; in refusing to give offered instructions; in its given instructions; in admitting incompetent evidence; and that the verdicts are flagrantly against the evidence and the instructions of the court.

A review of the record and a careful reading of the instructions of the court convinces us the Consolidated Coach Corporation is entitled to a reversal. We will reproduce only so much of the evidence as is required to demonstrate that the court improperly instructed, and failed to instruct properly, the jury. The duty rested on the administrator of Jolly and Angeline Bryant to establish not only that Jolly's death resulted from, and her injuries were sustained by, a collision of Jolly's automobile and the bus of the Consolidated Coach Corporation, but that it was at the time being negligently operated by its agent or servant in the furtherance of its business, and within the scope of the agent's employment. Gainesboro Tel. Co. v. Thomas, 234 Ky. 373, 28 S. W. (2d) 34; Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52; Spencer's Adm'r v. Fisel, 254 Ky. 503, 71 S. W. (2d) 955.

This rule is consonant with the principle that if ownership of a vehicle is established and that, at the time of an accident in which it is involved, it is in charge of the owner's servant, creates the presumption that the driver was his employee and acting within the scope of his employment. But evidence of mere ownership of a vehicle does not create the presumption that its driver was the owner's employee acting within the scope of his authority or in the furtherance of his master's business. See cases, supra.

Angeline Bryant was the only eyewitness of the accident in which Jolly was killed and she sustained

her injuries. As to how it happened, she was asked and answered thus:

"Q. When you approached the scene of the accident, what, if anything, did you observe come meeting you? A. I think it was a bus.

"Q. Do you know about the place where you met the bus? Can you tell us on the road or anybody's house? A. It was right on this side of the curve by Mr. Peace's house.

"Q. How far in front of Joe's car did you see this oncoming bus? A. About the fish hatchery. * * *

"Q. When you saw the bus coming by the fish hatchery, where was Joe's car? A. Right on yon side of the curve. * * *

"Q. As the car approached you, how was it going in the road? A. On our side of the road.

"Q. What, if anything, did Joe do when he saw the car come meeting him on his side of the road? A. Slowed down and pulled over on the side of the road. * * *

"Q. Did you notice whether the bus changed its course when it came close up to you? A. No, sir.

"Q. What happened then? A. It scraped us, and we went over the bank; made a scraping noise and we went over.

"Q. What effect, if any, did it have on your car? A. Pushed it over.

"Q. What happened then? A. I did not know anything for a while."

It is apparent that the vehicle which she states she thought was a bus, and that operated by Jolly, were in plain view of each other; each knew the other was approaching from the opposite direction. Other evidence discloses that the track of Jolly's car, for a distance of about 60 feet, ran on the brink of the highway, before it ran over the embankment, at a point at which the "scraping" of the vehicles occurred, of which she testified. The court, in the instructions to the jury, assumed that the vehicle, about which she testifies, was a

bus, and it was at the time owned and operated by the Consolidated Coach Corporation. The instructions also set forth the statutory duties governing the operation of motor vehicles on a highway, when about to meet and pass each other, and directed the jury, if it believed from the evidence the driver of the bus of defendant and Jolly met on the highway, "and the driver of the bus of the defendant failed to observe or exercise any one or more of the duties therein required of him, and that as a direct cause of said failure to observe or exercise such duties, the bus of the defendant struck the car of Jolly, if it did so, etc.," then the law is for the plaintiffs, and you will so find. It will be observed the word "cause" is improperly used in this instruction.

In addition to this, it was entirely unnecessary to define the statutory duties of the operators of the vehicles, since the presence and the manner of operation of each was known to the driver of the other. And inasmuch as the chief defense was that the vehicle about which Angeline Bryant had testified, was not a bus, and also not owned and operated by the Consolidated Coach Corporation, the instructions improperly assumed that the vehicle was a bus owned and operated by it. The instructions failed to advise the jury of its duty to determine whether Jolly's automobile, by reason of his own negligence, left the highway, not by reason of the negligence of the driver of the bus of the Consolidated Coach Corporation, as it approached and passed Jolly's automobile to the left of the center of the highway, and thereby his automobile was caused to leave the highway.

The law of the road required the driver of the Consolidated Coach Corporation's bus, if it was its bus, to keep to the right of the center of the highway, yet the mere driving or the presence of the bus on the wrong side of the highway is alone insufficient to sustain a verdict unless it is further shown that it was the proximate cause of the accident. Peterson v. Pallis, 103 Wash. 180, 173 P. 1021. "The only time when the occupancy of the wrong side of the highway becomes important in a case such as this is when it interferes with, or imperils, those who are rightfully there." Thomas v. Adams, 174 Wash. 118, 24 P. (2d) 432, 433; Wilson v. Congdon (Wash.) 37 P. (2d) 892; Chase v. Tingdale Bros., 127 Minn. 401, 149 N. W. 654; Berry on Auto-

mobiles (4th Ed.) sec. 865; Blashfield Cyclopedia of Automobile Law, page 414; Leonard v. Hey, 269 Mich. 491, 257 N. W. 733; Wilson v. Congdon (Wash.) 37 P. (2d) 892.

As we have already observed, the Consolidated Coach Corporation defends on the theory that Jolly's automobile, by his own negligence, left the highway; that if there was a vehicle present at the time and place of the accident, it was a truck, but if it was a bus, it was not owned and operated by it; also, that if its bus was to the left of the center of the highway at that time, it was not there because of the negligence of its driver.

The instructions of the court failed to advise properly the jury, as to the first, and omitted to advise it respecting its duty as to the latter portion of its theory.

On another trial, if one is had, the court should instruct the jury in substance as follows: If it believes from the evidence that it was a bus, at the time and place mentioned in the evidence, of the Consolidated Coach Corporation, operated by its driver in furtherance of its business, and it shall further believe from the evidence that as, and when, it approached and passed Jolly's automobile, it was negligently operated beyond the left of the center of the highway, and that its being so operated beyond the left of the center of the highway, if it were, was the proximate cause of Jolly's automobile leaving the highway, descending the embankment, and thereby killing him and injuring Angeline Bryant, then the law is for her and the estate of Jolly, and it should so find; unless it so believes, it will find for the defendant; or if it shall further believe from the evidence that Jolly was guilty of negligence in so driving his automobile after he knew of the approach of the bus that he thereby contributed to bringing about the accident and his death, which would not have happened but for his own negligence, then it should find for the defendant as to Jolly's estate, though it may believe from the evidence the defendant's bus, if it were its bus, was then operated beyond the left of the center of the highway; or if it further believes from the evidence that Jolly operated his automobile too close to the edge of the highway, and by reason thereof it left the highway and descended the embankment, and that such negligence, if any, on his part was the sole cause of Angeline Bryant's injuries,

then it will find for the defendant as to her. If it believes from the evidence that the vehicle which approached and passed Jolly's automobile at the time and place the latter left the highway was a truck, or not a bus of the defendant, it should find for the defendant.

These instructions with others defining, separately, the measure of damages, the terms "proximate cause," "ordinary care," and "negligence," informing the jury that it may find a verdict for the defendant as to either, or both the estate and Bryant, and as to the number of its members required to sign the verdict, should be given on another trial instead of those in the record.

In response to the argument of the Consolidated Coach Corporation that it is entitled to a reversal, with directions to give a peremptory instruction, it is sufficient to say there is some evidence tending to show that the vehicle involved was a bus owned by it and negligently operated by its driver. This evidence deprives it of the right to a directed verdict.

As to the question of the verdicts being palpably against the weight of the evidence, we express no opinion, since in our view the determinate issues have not yet been submitted to a jury by appropriate instructions. This and all other questions are reserved.

The judgment is reversed for proceedings consistent with this opinion.