## Colyer v. Hudson.

(Decided Oct. 30, 1935.)

W. O. HAYS and R. C. TARTAR for appellant.

WESLEY & SON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

W. H. Hudson, to recover for an injury to himself and damage to his automobile, brought this action against A. J. Colyer, the owner of a truck which Hudson charges was the proximate cause of his automobile leaving the highway, turning over and thereby injuring him and damaging his automobile. Colyer traversed the allegations of the petition and pleaded contributory negligence. On submission to the jury under the instructions of the court, a verdict was returned for $500 in favor of Hudson. Colyer strenuously insists that the court improperly refused to give instructions offered by him and likewise gave incorrect instructions. To determine the questions presented, a review of the evidence is required.

About 10 o'clock a. m., some time in September, 1934, Hudson was traveling in his automobile toward Somerset, Pulaski county, when he met a truck of Colyer traveling from Somerset toward Nancy; Hudson going up, and the truck down, grade, when his automobile ran off of the highway, down an embankment, turned over, injured him, and damaged his automobile. The place of the accident was about 240 yards east of Fishing Creek bridge. In making the distance from the end of the bridge to the point of the accident, Hudson and the operator of the truck were in plain view of each other. Hudson's wife was on the front seat with him. Maxine Hudson and Doyle Hudson, his daughter and son, and Octavia Hudson, his niece, were on the rear seat. Hudson claims the truck was traveling on the east side of the road or the side of the road on which he (Hudson) was traveling. He further testified that at the time of the collision he was traveling at the rate of 25 miles per hour; his car "was over just as far to the east," on his side of the road, as he could get it and avoid going over the bank, or "about two feet beyond the hard surfaced part of the road." When he first saw the truck, it was "on its left hand side of the road, just as close to the east side as it could get without running into the rocks"; it stayed on the same

side of the road until it reached a point immediately in front of his car, when the operator turned the front wheels and swerved the truck, and, as it did so, it hit his car. To be accurate, we here quote his testimony:

"The man in the truck kept coming on at a very high rate of speed, * * * coming 50 miles an hour, and on the wrong side of the road, my side of the road. When he got up close, well, I judge in two feet of me, he swerved his front wheel, like this [indicating] and his back wheels skidded and hit my front wheel and fender and knocked my car down over the grade."

Maxine, Doyle, and Octavia Hudson described the accident in substantially the identical language. Claude Merricks, Clyde Nelson, Robert Phelps and Tom Nelson testified they were near the accident at the time it happened, and that they witnessed the traveling of Hudson's machine on his right-hand side of the highway and the approach of the truck traveling to the left of the center of the highway in the direction in which it was going. Other witnesses testified they immediately went to the scene of the accident, and observed the tracks of the automobile and the truck, which corroborate the testimony of the other witnesses as to the side of the road on which both the automobile and the truck were traveling as they approached each other.

For Colyer, Bob Hays, Leonard Colyer, Ureal Colyer, Perk Adams and Harold Higginbotham depose they were at or near the place of the accident and observed the automobile and the truck approaching each other on the highway. They testified Hudson was traveling to the left of the center of the highway in the direction in which he was traveling and his car was "zigzagging"; he lost control of it; it ran off the embankment and turned over; and that the truck was traveling before, as, and after it passed Hudson's automobile to the right of the center of the highway in the direction in which it was traveling, and in passing the automobile it passed from two to five feet to the right of it and to the right of the center of the highway, and that at all times it was to the right of the center of the highway, and did not come in contact with Hudson's automobile.

It is apparent that Hudson's evidence establishes that the operation of the truck to the left of the center of the highway, considering the direction in which it

was traveling, was the proxmate cause of his car leaving the highway. That of Colyer exonerates the opertor of his truck of all blame, and with like positiveness shows that Hudson's injury and damage to his automobile were caused solely by the operation of his automobile.

The law of the road required Hudson and the operator of Colyer's truck to keep to the right of the center of the highway in the direction in which each of them was traveling. The mere driving of Colyer's truck on the wrong side of the road alone was insufficient to constitute actionable negligence, unless it was further shown that the driving it to the left of the center of the highway was the proximate cause of the accident. Peterson v. Pallis, 103 Wash. 180, 173 P. 1021. The only time the occupancy of the wrong side of the highway becomes important in a case such as this is when it interferes with or imperils those who are rightfully there. Thomas v. Adams, 174 Wash. 118, 24 P. (2d) 432; Wilson v. Congdon, 179 Wash. 400, 37 P. (2d) 892; Blashfield's Cyclopedia of Automobile Law, p. 414.

Each party's evidence exculpates him and portrays the other as a violator of the law of the road.

The sharp decisive issue thus presented by the evidence is: Did the truck strike Hudson's automobile and thereby cause it to leave the highway, or was the proximate cause of its leaving the highway Hudson's own operation of it? This issue alone should have been submitted to the jury, together with instructions defining the measure of damages, negligence, ordinary care and one informing the jury of the number of its members necesary to agree on a verdict.

An examination of the instructions, offered and given, considered in conection with the evidence, convinces us that the instructions improperly submitted the issue to which the evidence was directed and which was to be determined by the jury. It is entirely unnecessary to review them and point out their imperfections. It is sufficient to say that it was wholly unnecessary, as well as confusing and prejudicial, to define the statutory and common law duties of the operator of either the automobile or truck as they are stated in them.

The instructions in every case should be as specific

and as concrete in form as possible. Louisville & N. R. Co. v. King's Adm'r, 131 Ky. 347, 115 S. W. 196. In so giving them, the court should confine them to the issues made by the pleadings and to which the parties direct their evidence, and which tends to support their respective theory of the case. Hess' Adm'r v. Louisville & N. R. Co., 249 Ky. 624, 61 S. W. (2d) 299.

On another trial, if one is had, the court in giving instructions should observe these principles and instruct the jury, in substance, as follows: If it believes from the evidence that at the time and place mentioned in the evidence Colyer's truck was negligently operated by its driver, as and when it approached and passed Hudson's automobile, beyond the left of the center of the highway, in the direction in which it was traveling, and that its being so operated beyond the left of the center of the highway, if it were, was the proximate cause of Hudson's automobile leaving the highway, descending the embankment, and thereby injuring him and damaging his automobile, then the law is for him and the jury should so find. Unless it so believes, it will find for Colyer; or, if it believes from the evidence that Hudson operated his automobile to the left of the center of the highway, and thereby caused, or helped to cause, his automobile to leave the highway, or if he so operated it as to bring about, or as contributed to the bringing about, his automobile leaving the highway, and thereby injuring him and damaging his automobile, which would not have happened except for his so operating it, if he did so, then you should find for Colyer, though it may believe from the evidence that Colyer's truck was then being operated beyond the left of the center of the highway, considering the direction in which it was traveling. See Consolidated Coach Corporation v. Sarah E. Bryant (Consolidated Coach Corporation v. Joseph R. Jolley's Adm'r), 260 Ky. 452, 86 S. W. (2d) 88, decided April 30, 1935; Lawson's Adm'r v. Brandenburg, 240 Ky. 68, 41 S. W. (2d) 201; W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. (2d) 16; Allender Co. v. Browning's Adm'x, 242 Ky. 273, 46 S. W. (2d) 116. If either party requests it, the court should define the term "proximate cause."

For the reasons indicated, the judgment is reversed, with directions to award Colyer a new trial consistent herewith.