## Williams et al. v. Coleman's Adm'x.

(Decided March 4, 1938.)

ANDREW E. AUXIER and W. A. DAUGHTERY for appellants. J. E. CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

There were two separate actions, one brought by Mary Coleman, as the administratrix of the estate of Miles Coleman, and the other by Louisa Farmer, as a companion case, administratrix of the estate of Sherd Farmer, in the Pike circuit court against Robert Williams and G. C. Call, partners, doing business at Ashland, Ky., under the title of the Williams Feed & Transfer Company. See Williams v. Farmer's Adm'x, 273 Ky. 131, 115 S. W. (2d) 589.

By these actions they sought to recover for personal injuries suffered by their husbands, Miles Coleman and Sherd Farmer, respectively, in a collision of an automobile, owned and driven by Coleman and in which they were riding, with a truck of the appellants, then in charge of and driven by appellants' servant, Jeff Owens, in the performance of their business and within the scope of his employment.

A separate verdict and judgment for damages in the sum of $5,000 was returned and given in each case.

These two actions, both arising out of this collision, were tried together before the same jury, on the same evidence and under substantially the same instructions, which are here brought before us for review, seeking a reversal of the judgment upon a multifold assignment of alleged errors committed on the trial by one bill of exceptions, but with a separate transcript of the clerk's record in each case.

The deceased, Coleman and Farmer, the petitions in these actions respectively alleged were killed in the car and truck collision here involved, which occurred about the noon hour of August 6, 1936, at a point on the Mayo Trail about ten miles east of Pikeville on which Coleman with his neighbor, Farmer, were then traveling in a northwestwardly direction to their work, from their homes at Draffin to the Wheelwright mines some miles distant where they were employed, while Jeff Owens, the appellants' colored agent and driver of their truck, accompanied by a colored woman companion, was traveling over the same highway in an opposite or southeastwardly direction, engaged in making deliveries of dressed meat for his employers, the defendants, to certain of their merchant and mine customers in Pike county.

The plaintiffs in their actions rested the asserted liability of the defendants for the fatal injuries received by their husbands in the collision upon allegations of negligence upon the part of the driver of the defendants' truck, as being the proximate cause of the collision and consequent injuries sustained by· the deceased.

The defense was a denial of the negligence alleged, with the further pleas made that Coleman and Farmer had been guilty of contributory negligence in the operation of their car, which contributed to bringing about the collision in question; also that the sudden emergency had been created by Coleman's negligence as the driver of his car, which served to excuse any alleged negligent driving of the truck by Owens or mistake made by him, when confronted with the sudden appearance of Coleman's car on his left side of the road, and, further, that Farmer was, when riding with his friend, Coleman, upon this occasion, engaged in a joint enterprise with him, serving to make the latter's charged contributory negligence imputable to him.

Under such issues joined, the duty rested upon the plaintiffs (here appellees) to establish not only that Coleman's and Farmer's deaths resulted from and their injuries were sustained by the collision of Coleman's automobile and the defendants' truck, but also that the latter was at the time of the collision negligently operated by their agent in the furtherance of their business and within the scope of his employment.

However, as to this, there is here no issue made as to Owens being the agent of the appellants, and also being at the time of the collision then engaged on his employer's business, but it is admitted that the colored driver of the truck was at the time of the collision the agent of and operating the truck in such capacity and manner.

It is further here obvious that Coleman, the owner and driver of the car involved in the collision, and his companion, Farmer, then riding with him, having both been killed in the collision and there being no other eyewitness of the accident than the driver of the truck and his woman companion, the plaintiffs of necessity had to resort, in meeting the burden of proof assumed by them, of showing that the defendants' driver's negligence was the proximate cause of the collision and the

injuries sustained therein by the deceased Coleman and Farmer, to the available circumstantial evidence furnished in the physical facts, evidenced by the condition and position of the car and truck upon the road, immediately after the happening of the collision upon the highway.

The testimony of the plaintiffs' witnesses as to these matters is that the car and truck in question were both found jammed together on Coleman's and Farmer's right-hand side of the road, across the ditch and against the hill, clearly tending to show that the wreck had occurred on that side of the road, or on the truck driver's left-hand side of it.

Further, the physical fact as to the damaged condition of the car and truck when found also tended to throw some light upon the question as to the place and side of the road where the collision occurred and the circumstances under which it occurred.

The evidence as to this was that Coleman's car was practically cut in two and totally destroyed and its occupants caught beneath it and killed, while the front of the truck too was badly damaged by having its left front wheel torn loose from the frame and driven under the running gear, as well as having the other of its front wheels broken; also, its brakes, steering gear, and axle were broken and its headlights badly shattered and the fallen glass therefrom found scattered over the truck driver's left of the road, marking such side of it as the place where it rammed the car of the deceased. Also, the truck's oil pan, located about the middle of the truck, was found to have been broken by the impact of the collision, allowing its oil to leak and causing a black spot or pool of it to be found about the middle of the road, it also tending to show the truck's left wheels were well over and to the left of the middle of the road, and which physical fact served to mark and designate the oil pool spot on the road as the position of the middle front of the truck on its left side of the road at the time of the collision when it there struck Coleman's approaching car.

Further, the testimony as to these physical facts found at the point of collision upon the highway was that the black-top surface of this road was wet at the time this accident occurred, due to its being at such time a rainy day, and by reason of such fact the tracks

of both the truck and Coleman's car were for a distance of three or four hundred feet in each direction from the point of collision clearly traceable and visible on the roadway, leading up to the rear of both the car and truck, and plainly showing the course followed by each of them and their positions on the highway with respect to its medial line, as they were being driven over the road to the point of their meeting and collision thereon.

The testimony of plaintiffs' witnesses as to this was that the tracks showed that the truck had approached the Coleman car while on its left side of the highway, while the long track extending back from the Coleman car clearly established that it was driven in a straight line *on his right side of the highway.*

The evidence as to the positions of the car and truck at the time of the collision, as shown by their tracks, is thus in conflict, as is also the further showing, recited supra, made by this circumstantial evidence, resting upon the physical facts testified to as to the shattered glass of headlights, the spot of oil on the road made by the truck's broken oil pan, and the character of damage suffered by the car and truck respectively in colliding, it being undisputed that the front of the truck was thus badly damaged, while the front of the car was in nowise at all injured, but otherwise was the showing contradicted by the testimony of the appellants' driver and eyewitness, in which he was corroborated by his then woman companion, who when testifying gave the following account of how the collision occurred:

"I was going up the road on the right side of the road and I first seen the Coleman car coming around the curve. It was on my side of the road as he come around the curve. Well it was raining, drizzling rain and I judge that the car was running fast at the time I seen it, so I applied the brakes just a little, then the Coleman car went back to the right side of the road, well all was well then so I stepped on the gas again and started on. Well, just in a split second the Coleman car swerved back to my side of the road and at that time just a second until they collided. I first thought that the car was going over the hill over by the well box and I thought I could dodge around it and I said

that is wrong, so I stayed on the right side of the road, my right side, and they hit.''

Upon the conclusion of the evidence, the defendants moved for a peremptory instruction, directing the jury to find for them, which motion was overruled and the instruction asked refused.

Further, the appellants offered other instructions upon contributory negligence, sudden emergency, and covering other theories of their defense, which the court also refused to give, and upon its own motion gave to the jury separate instructions in each case, although some of those so given in both cases were the same.

Turning our attention now to the instructions given in the Coleman case, which appellants criticize as reversibly erroneous, it is to be here remembered that the court first overruled appellants' motion for a peremptory instruction, of which they complain, and also criticize certain .of the further instructions, both as given and refused by the court as being an erroneous ruling, either in form or in substance.

By instruction No. 1 (given in both cases) the court instructed the jury that:

"It is, and was at the time of the accident referred to * * * the duty of all persons operating motor vehicles, such as automobiles and trucks, when meeting upon the highway proceeding from opposite directions, to pass each other to the right, each giving to the other one-half of the road as nearly as possible, and to exercise ordinary care to avoid colliding with and injuring persons or vehicles upon the highway, and if you shall believe from the evidence that Jeff Owens in operating the truck of the defendants referred to in the evidence, in meeting the automobile operated by Miles Coleman and in attempting to pass said automobile negligently failed to keep said truck on the right side of the road so as to give to the said Miles Coleman one-half of the road as nearly as possible, or failed to exercise ordinary care to prevent said truck from colliding with the automobile operated by the said Miles Coleman, and that by reason of such failure on the part of the said Jeff Owens, said truck and automobile were caused to collide with each other and inflict such injuries

upon the said Miles Coleman that he died thereby, in this event the law is for the plaintiff and you should so find.''

By instruction No. 2 (also given in each case and which was, it appears, given as the converse instruction to No. 1) the jury was told that:

"Unless you shall believe from the evidence that the said Jeff Owens, in operating the truck of defendants, referred to in the evidence, in meeting the automobile operated by the said Miles Coleman, and in attempting to pass said automobile negligently failed to keep said truck on the right side of the road as nearly as possible, *or failed to exercise ordinary care* to prevent said truck from colliding with the automobile operated by the said Miles Coleman, and that by reason of such failure on the part of said Jeff Owens said truck and automobile were caused to collide with each other and inflict upon the said Miles Coleman the injuries resulting in his death, in this event the law is for the defendants and you should so find." (Italics ours.)

Instruction No. 3 (given in the Coleman case on contributory negligence and defining ordinary care as applied to Coleman) instructed the jury that:

"It was the duty of the said Miles Coleman, at the time and place referred to in the evidence, to exercise ordinary care for his own safety, and for the safety of his automobile, and ordinary care means that degree of care and caution for the safety of himself and his automobile, which is usually exercised by ordinary prudent persons operating like automobiles under like or similar circumstances to those proven in this case, and if you shall believe from the evidence that the said Miles Coleman failed to exercise such care and that by reason of such failure on his part he caused or brought about the accident of which the plaintiff complains, and that but for such failure on his part said accident and death of the said Miles Coleman would not have occurred, in this event the law is for the defendants and you should so find, although you may believe from the evidence that the said Jeff Owens in operating the truck of the defendants failed to exercise one or both of the duties required of him as set out in the first instruction.''

The other instructions given in the case are not criticized or here involved.

Now turning our attention to the consideration of the defendants' objections made to these instructions, the first is that the court erred in refusing to give a peremptory instruction. We find this objection to be without merit, in that we are convinced that there was ample circumstantial evidence here submitted by the appellees to require a submission of the question of the defendants' negligence upon this occasion to the jury.

It is sufficient answer to appellants' insistence on this to say that there was here, by the testimony given as to the physical facts found at the place of the accident immediately after its occurrence, some evidence tending to show that the truck owned by the appellants was being negligently operated by its driver at the time of his attempted passing and collision with Coleman's car. The fact that there is such evidence of probative character deprives the appellants of the right to a directed verdict. It is very clear that this circumstantial evidence offered by the appellees was of such character and significance that men of ordinary judgment might differ as to whether inferences were reasonably to be drawn therefrom, tending to show that defendants' truck had been negligently operated at this time.

In such case, the question of whether the truck driver was or was not so negligent became one for the jury, as the appellants are not entitled to have this question in issue determined solely by the testimony of their own witnesses, as alone furnishing the only correct theory and solution of the happening of the accident. See sections 2739g-35 and 2739g-39, Kentucky Statutes; Abell v. Whitehead, 266 Ky. 764, 99 S. W. (2d) 770; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715.

A careful review of the record and reading of the instructions Nos. 1, 2, and 3, however, as given by the court in the Coleman case, leads us to the conclusion that the defendants' objections are meritorious and that they are entitled to a reversal of the verdict and judgment returned because of what we conceive to be their prejudicial character as imposing unequal burdens.

The form of instruction No. 1 is criticized in the case of Consolidated Coach Corporation v. Bryant, 260

Ky. 452, 86 S. W. (2d) 88, 90, where it was said, in discussing a like instruction, that:

"It was entirely unnecessary to define the statutory duties of the operators of the vehicles, since the presence and the manner of operation of each was known to the driver of the other. * * *

"The law of the road required the driver of the Consolidated Coach Corporation's bus, if it was its bus, to keep to the right of the center of the highway, yet the mere driving or the presence of the bus on the wrong side of the highway is alone insufficient to sustain a verdict unless it is further shown that it was the proximate cause of the accident. Peterson v. Pallis, 103 Wash. 180, 173 P. 1021. 'The only time when the occupancy of the wrong side of the highway becomes important in a case such as this is when it interferes with, or imperils, those who are rightfully there.' "

However, in this connection it is to be noted that instructions Nos. 1 (defining the duty imposed on all persons operating motor vehicles (section 2739g-39, Kentucky Statutes) and 2 imposed upon the defendants' truck driver, when meeting the Coleman automobile and attempting to pass it, *both the statutory duty* of keeping on the right side of the road so as to give Coleman one-half of it as nearly as possible *and also the common-law duty of exercising ordinary care* to avoid colliding with and injuring persons on the highway, while in setting out the duties resting upon Coleman, as the driver of the other car involved, in the contributory negligence instruction No. 3, the court did not alike impose upon Coleman both of these duties imposed on the truck driver, but only the one common-law duty to exercise ordinary care for his own safety and the safety of others using the highway, with a definition given of "ordinary care."

By instruction No. 3, the jury was further told that, if Coleman failed to exercise only this one duty of ordinary care and if such failure caused or brought about the accident and but for which it would not have occurred, it should find for defendants.

The jury was told by instructions Nos. 1 and 2, on the other hand, that if it believed Owens failed to perform *either the statutory or the common-law duty* when meeting and attempting to pass Coleman's car, that it

should find for plaintiffs. In other words, although the duties of the drivers of the truck and car when meeting and attempting to pass each other on this occasion were reciprocal and the same, the instructions as given did not impose the same duties on both or so admeasure them, but unequally imposed upon the truck driver the observance of two duties, imposed respectively both by the statutes and the common law, whereas only the one duty of exercising ordinary care was imposed upon Coleman, the driver of the car.

Appellants contend, and we conceive properly, that by reason of such unwarranted difference and discrimination made in the two instructions, so specifically detailing and defining the duties of the defendants' driver while not so defining like duties as imposed upon Coleman, the defendants were prejudiced and therefore entitled to a reversal. We concur in appellants' contention that the effect of this distinction made was to magnify or emphasize the duties of appellants' driver, while minimizing the like duties of Coleman. Such being our conclusion and that same is so determinative of the appeal as to call for a reversal of the judgment in the Coleman case and the granting of a new trial, we deem it unnecessary to here further consider or discuss the other points raised by the appellants and upon which they seek a reversal.

Judgment reversed and cause remanded for a new trial consistent with this opinion.